### 1279.   GRIFFIN v. THE STATE.

1. The possession of either cards or money may authorize the inference that a defendant who was present at an unlawful game of cards was engaged therein,. and, upon proof of an unlawful game, he may legally be convicted of participating therein.

2. That the prosecutor in a criminal case, without the knowledge of the defendant or his counsel, entered the jury room, where the jury were considering the case, and delivered to them a pack of cards, which had been identified during the trial as having been used by the defendant in the unlawful game in question, but which had not been admitted in evidence by the court, is good ground for a new trial.

Accusation of gaming, from city court of Fitzgerald—Judge Jay. June 22, 1908.

Submitted October 5,—Decided October 26, 1908.

*Haygood & Cutts,* for plaintiff in error.

*O. H. Elkins, solicitor,* contra.

RUSSELL, J. In the court below the defendant was convicted upon an accusation of the offense of gaming. He moved for a new trial, upon the general grounds, and also upon the special ground that the prosecutor in the case entered the jury room while the jury were considering their verdict, and delivered to them a pack of playing cards.

While all the evidence of the defendant's guilt is circumstantial and the case against him weak, still, under our ruling in the case of *Griffin* v. *State,* 2 *Ga. App.* 534 (58 S. E. 781), we can not say a verdict of guilty was unauthorized by the evidence.

The more serious question in the case is the special ground, from which it appears that the prosecutor went into the jury room and gave them, 'for use during their deliberations, a pack of playing cards which some of the witnesses had testified was the pack used by the players in the game in which it was alleged the defendant participated, some of these cards being the cards which witnesses testified they saw the defendant handling and shuffling. According to the record, a pack of cards was identified during the introduction of the testimony, but they were not tendered in evidence or admitted by the court. It is not a case, therefore, where a part of the evidence, which had been properly tendered and admitted, but inadvertently had been left in the courtroom, was thereafter delivered to the jury. But even if the pack of cards had been properly in evidence and the court had desired that they be delivered to the jury, the sheriff in the present instance, being the prosecutor, could not act as the officer of the court for this purpose. He was disqualified to act as sheriff during the trial of this case. The jury can not properly be put in the charge of the sheriff while trying a case in which he is prosecutor. The testimony in behalf of the movant, in support of this ground, was, that after the jury had been out for some time, he saw the prosecutor go into the jury room, where the jury were, with the case under consideration, and close the door behind him and remain in the room about ten minutes.

For the State the prosecutor testified: "I opened the jury-room door, and walked in and laid the pack of cards on the table in the room, and spoke no words to any one, nor did I make any sign of any kind whatsoever. The table was three or four feet from the door, and I was in the room only so long as it took me to walk to the table, lay the cards down, and walk out." Three of the jurors testified, that the sheriff only walked to the table and laid the cards down and walked out, and was in there no longer than was necessary for that purpose, and that his presence in the room did not influence their decision. Just as the verdict was about to be published, a bystander informed the defendant's counsel that the prosecutor had been in the jury room.

We think this unauthorized introduction of foreign matter before the jury, and unwarranted interference with their deliberations, on the part of the prosecutor, requires the grant of a new trial. The highest public policy and the maintenance of the purity of our jury system demand that the verdict of the jury shall not only be untainted by illegal, improper, and prejudicial influences, but even that it shall be above suspicion. Where gross irregularities are shown, the presumption arises that the injured party has been prejudiced thereby, and it devolves upon the party gaining the verdict, at least, to demonstrate unequivocally that it was not in the slightest degree affected by the incident which marred the legal harmony of an orderly trial. We apprehend this to be the rule in civil and criminal cases alike, but certainly if the rule is to be relaxed, its observance is less important where only property rights are concerned than where the liberty of the citizen is involved. As held in *Killen* v. *Sistrunk, 7 Ga.* 283 (2), "if a paper not in evidence be delivered to the jury by design, by the party in whose favor the verdict is returned, the verdict will be set aside, even if the paper is immaterial." Judge Lumpkin, delivering the opinion in that case, cites the case of Sargent *v.* Roberts, 1 Pick. 337 (11 Am. D. 185), and says, "The case of Sargent *v.* Roberts is a strong illustration of the solicitude with which every statement or communication with the jury, not made in open court and in the presence or with the knowledge of the parties or their counsel, is excluded. A new trial was granted, because the judge, after the court was adjourned, wrote a letter to the jury, respecting the cause which had been committed to them,

which he directed them to bring into court with them, to be filed with the papers, and the substance of which, it was admitted, was wholly unexceptionable. The court acted upon the opinion, *that any communication at all,* was improper, and that *for that reason* the party against whom the verdict was, was entitled to a new trial." In *Walker* v. *Hunter,* 17 *Ga.* 364 (4), in which Judge Benning rendered the opinion in behalf of the court, the rule is even more stringently stated, and it is held, that "if a paper, calculated to influence the jury in favor of one of the parties, gets before them while considering of their verdict, and they find for that party, it is a ground for a new trial." It will be observed that this holding goes to the extent that if a paper gets before the jury, though not even by means of one of the parties, and it is *calculated* to influence them, a new trial should be granted. The *Walker* case, like the *Sistrunk* case, was a civil case. In the *Walker* case one Solomon, who was the ordinary, seems to have wished to be sustained in his ruling in setting up the will then in question. In the present case the prosecutor, who was the sheriff, might have desired, and naturally would have desired, to sustain his testimony. So far as the regularity of the trial is concerned, to use the words of Judge Benning, "the affair has an ugly look." The crucial point was whether the defendant, whom no testimony showed to have had money during the game, had any cards in his hands. The testimony of the prosecutor was that he did have them. Several witnesses testified, in behalf of the defendant, that he had no cards, and did not, at the time in question, participate in any game. What could better impress upon the jury the testimony of the sheriff and prosecutor, contradictory of the evidence in behalf of the defendant, that he had seen the defendant with cards, and that these were the cards, and, if, as is usual, the sheriff was reasonably popular with the jurors, what could be more prejudicial to the defendant, than this silent recall and emphasis of the sheriff's testimony, by the presentation and deposit of the cards upon the table? Three jurors say that it did not influence their decision. It is significant that no evidence was secured from the remaining jurors who tried the case; and they are not shown to have been inaccessible. The presumption remains that the other nine jurors were affected, to the prejudice of the defendant.                              *Judgment reversed.*