### 33727. REAVES et al. v. THE STATE.

MARSHALL, Justice.

The appellants, Reaves and Clements, were convicted in the Dodge Superior Court of the murders of Dalt and Georgia Kate Burnam and sentenced to life imprisonment. Dalt Burnam was a deputy sheriff of Dodge County. His diligent law enforcement activities posed a severe threat to those in the county engaged in the illegal drug and liquor businesses. Appellant Clements owned a drug store in Rhine, which is in Dodge County. He made illegal drug sales to Luther Hulett, who distributed the drugs in Dodge County and elsewhere. John Henry McDuffie was involved in the illegal liquor business in Dodge County. Clements, Hulett, and McDuffie paid appellant Reaves $3,500 to kill Dalt Burnam and his wife, Georgia Kate Burnam. (It became necessary to kill Dalt Burnam's wife, since there was no opportunity to kill him during off-duty hours without her being present.) The Burnams were slain in their home with a shotgun on October 6, 1973.

McDuffie was tried and convicted of both murders. Hulett pleaded guilty, and he testified for the state at the joint trial of Clements and Reaves. The evidence introduced at their trial will be reviewed as is necessary for a consideration of the enumerations of error raised.

1. In the first two enumerations of error, both Reaves and Clements argue that as to their respective involvements in the crimes there was insufficient corroboration of the testimony of the accomplice Hulett, so as to require the granting of their motions for directed verdict, judgment n.o.v., or new trial.

The rule is well settled in this state that to sustain a conviction in a felony case upon the testimony of an accomplice, there must be corroborating facts or

circumstances which, in themselves and independently of the testimony of the accomplice, directly connect the defendant with the crimes or lead to the inference that he is guilty, and which are more than sufficient to merely cast on the defendant a grave suspicion of guilt. Code § 38-121; *Carter v. State,* 237 Ga. 617 (229 SE2d 411) (1976); *Smith v. State,* 236 Ga. 12, 15-16 (222 SE2d 308) (1976); *West v. State,* 232 Ga. 861, 864 (209 SE2d 195) (1974); *Allen v. State,* 215 Ga. 455, 457 (111 SE2d 70) (1959); *Price v. State,* 208 Ga. 695 (69 SE2d 253) (1952). However, the corroborating evidence need not of itself be sufficient to warrant a conviction of the crime charged. *Smith v. State,* 238 Ga. 640 (235 SE2d 17) (1977). Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict. *Birt v. State,* 236 Ga. 815, 826 (225 SE2d 248) (1976).

In the present case, the trial court found independent corroborating evidence as to Reaves' involvement in the Burnam murders in his admission to the witness Glenn Blakely that he, Reaves, had committed the murders. The trial court also found corroboration as to Reaves in the testimony of other witnesses that he had attempted to enlist them to aid him in committing a murder during the same time period and for the approximate amount of money he received for committing the Burnam murders. There was clearly sufficient corroboration as to Reaves.

As to Clements' involvement in the murders, the trial court found sufficient corroborating evidence in testimony that he and Hulett were engaged in widespread illegal drug trafficking in the area, and in the testimony of Donna Dix that she had overheard Clements and Hulett discussing "something about three thousand dollars for the killings."

Clements correctly argues that evidence of his illegal drug activities would not alone be sufficient corroboration of Hulett's testimony to convict Clements of the crimes. This evidence would show only that Clements had a motive for killing Dalt Burnam. Evidence of motive is not, in itself, sufficient corroboration of the testimony of an accomplice. *Price v. State,* 208 Ga. 695, supra; *Williams v. State,* 152 Ga. 498 (110 SE 286) (1921); *Nix v. State,* 133

Ga. App. 417 (211 SE2d 26) (1974).

However, Donna Dix gave testimony from which the jury was authorized to find that she had overheard Clements discussing the $3,000 pay-offs for the killings with Hulett, a confessed participant in the crimes. Only the planners of the murders would have knowledge of the amount of the money paid the killer. There was sufficient, albeit slight, corroboration of Clements' involvement in the murders. The first two enumerations of error are without merit.

2. In the third enumeration of error, both appellants argue that the trial court erred in overruling their motions to quash the indictments against them. These motions were asserted on the ground that the only evidence before the grand jury linking the appellants to the murders was testimony given by an FBI agent concerning statements made by Hulett and McDuffie. It is argued that the FBI agent's grand jury testimony as to McDuffie's statements does not constitute legal evidence, because McDuffie's statements were later suppressed by the trial court. It is also argued that the FBI agent's testimony as to McDuffie's statements, as well as his testimony as to Hulett's statements, is inadmissible as hearsay.

In *Buchanan v. State,* 215 Ga. 791 (2) (113 SE2d 609) (1960), the question of whether the evidence before the grand jury can ever be inquired into was left undecided. However, it was decided in that case that the sufficiency of the legal evidence before a grand jury is not subject to inquiry. Accord, *Williams v. State,* 222 Ga. 208, 212 (149 SE2d 449) (1966). However, it was held in *Meriwether v. State,* 63 Ga. App. 667 (11 SE2d 816) (1940) that an indictment will be quashed where it is returned wholly on illegal evidence, i.e., evidence obtained through an illegal search and seizure. It was also decided in *Meriwether v. State* that the burden is on the defendant seeking to quash the indictment to overcome the presumption that it was returned on legal evidence by showing that there was no other competent evidence upon which it lawfully could have been returned.

The question presented for decision is whether an indictment may be returned wholly upon hearsay

testimony. The appellants point out that under Georgia law witnesses testifying before a grand jury must be administered an oath, Code §§ 59-210, 59-211, and that the grand jury cannot return a true bill except upon the testimony of a witness to whom the statutory oath has been administered. *Lennard v. State,* 104 Ga. 546 (30 SE 780) (1898); *In re Lester,* 77 Ga. 143 (1886); *Switzer v. State,* 7 Ga. App. 7 (65 SE 1079) (1909).

In Costello v. United States, 350 U. S. 359 (76 SC 406, 100 LE2d 397) (1956), the Supreme Court of the United States, in the exercise of its power to supervise the administration of justice in the federal courts, refused to establish a rule permitting defendants in criminal cases to challenge indictments on the ground that they were based solely on hearsay evidence. The Supreme Court of the United States, in the exercise of its supervisory jurisdiction over the federal courts, has also held that the exclusionary rule of the Fourth Amendment would not be applied in federal grand jury proceedings. See United States v. Calandra, 414 U. S. 338 (94 SC 613, 38 LE2d 561) (1974).

Without establishing a general rule in Georgia that indictments can be returned wholly upon hearsay evidence, we hold that the testimony of a law enforcement official as to statements made given to law enforcement officials by criminal suspects, although it is hearsay, is sufficiently reliable to form the basis for the return of an indictment. (We do note that the GBI agent in this case was administered the statutory oath.) It was the hearsay testimony of government tax agents on which the indictment in Costello v. United States, supra, was based.

In addition, hearsay evidence is not illegal evidence, and under *Buchanan v. State,* supra, the sufficiency of the legal evidence is not subject to inquiry. The appellants have not shown that the indictments were returned upon wholly illegal evidence. The reason for suppression of McDuffie's statements as to Reaves' and Clements' involvements in the crimes does not appear from the record. Even if McDuffie's statements were suppressed for reasons that would render their use in court "illegal," the grand jury still had Hulett's statements before it as an alternative basis for returning the indictment against the

appellants. The third enumeration of error is without merit.

3. In the fourth enumeration of error, both Reaves and Clements contend that the trial court erred in overruling their respective motions for severance.

Under Code Ann. § 27-2101 (Ga. L. 1971, pp. 891, 892), in a capital felony case in which the state has waived the death penalty, the question of whether to try two or more co-indictees together or separately lies within the discretion of the trial court. If the state is seeking the death penalty, Code Ann. § 27-2101 gives any defendant so electing the absolute right to be tried separately.

The appellants make two arguments. First, they argue that the distinction which Code Ann. § 27-2101 draws between capital cases in which the state is seeking the death penalty and other capital cases has no rational basis and, therefore, constitutes a violation of equal protection and due process.

We disagree. It is too late in the history of capital punishment to argue that trials in which the death penalty is being sought are not different from other trials. The General Assembly has made the legislative determination that anyone standing trial for his life has the absolute right to be tried alone. That the trial court has discretion in other capital felony cases to determine whether or not the defendant should be tried alone does not deny those other capital felons due process or equal protection. It does not deny them equal protection because those defendants against whom the death penalty is being sought are differently situated. It does not deny them due process, unless perhaps the trial court abused its discretion in denying the motion for severance.

This brings us to the appellants' second argument, which is that the trial court did abuse its discretion in overruling their motions for severance. In order to establish that the trial court abused its discretion in denying the defendant's motion for severance, the burden is on the defendant to make a clear showing of prejudice. *Cain v. State,* 235 Ga. 128, 129 (218 SE2d 856) (1975): "Some of the considerations for the court in exercising its discretion have emerged from the cases considering motions to sever: 1. Will the number of defendants create

confusion of the evidence and law applicable to each individual defendant? 2. Is there a danger that evidence admissible against one defendant will be considered against another despite the admonitory precaution of the court? 3. Are the defenses of the defendants antagonistic to each other or to each other's rights? See People v. Maestas, 517 P2d 461 (Colo. 1973). If the defendant can show the court by some facts that failure to sever will prejudice him under one or more of these considerations, his motion should probably be granted."

Both Reaves and Clements argue that they were prejudiced by being tried together, since evidence admissible against only one of them was considered by the jury against the other.

Reaves argues that evidence of Clements' illegal drug activities was inadmissible against Reaves. We disagree. This evidence showed Clements' motive for killing Walt Burnam; therefore, the evidence was admissible against Clements' coconspirator, Reaves. *Knight v. State,* 239 Ga. 594 (2) (238 SE2d 390) (1977); *Johnson v. State,* 188 Ga. 771 (5) (4 SE2d 639) (1930).

Clements argues that statements made by Reaves to others in attempts to enlist them to aid him in doing the killings were inadmissible against Clements. We disagree with this argument also. These statements fall squarely within the rule of Code § 38-306 that after the fact of conspiracy has been proved declarations of one conspirator during the pendency of the criminal project are admissible against all. *Orkin v. State,* 236 Ga. 176 (6, 7) (223 SE2d 61) (1976); *Lindsey v. State,* 227 Ga. 48 (3) (178 SE2d 848) (1970).

We find no abuse of discretion on the part of the trial court in overruling the appellants' motions for severance. This enumeration of error is without merit.

4. In the fifth enumeration of error, the appellants argue that the trial court erred in overruling their motions for change of venue due to adverse pre-trial publicity.

Code Ann. § 27-1201 (Ga. L. 1972, p. 536) provides for a change of venue in any criminal case where (1) an impartial jury cannot be obtained, or (2) there is a probability or danger of violence. "The test as to whether

newspaper publicity has so prejudiced a case that an accused cannot receive a fair trial is whether the jurors summoned to try the case have formed fixed opinions as to guilt or innocence of the accused from reading such newspaper articles. *Krist v. Caldwell,* 230 Ga. 536, 537 (198 SE2d 161) (1973)." *Welch v. State,* 237 Ga. 665, 668 (1) (229 SE2d 390) (1976). Motions for change of venue address themselves to the sound discretion of the trial court. E. g., *Coleman v. State,* 237 Ga. 84, 90 (226 SE2d 911) (1976); *Allen v. State,* 235 Ga. 709 (221 SE2d 405) (1975); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975).

Although unusually tight security measures were instituted during the trial, the appellants do not allege that there were any threats made against them. Furthermore, during the course of the trial, there were no occurrences of violence. Therefore, the only question presenting itself in this appeal is whether an impartial jury was selected.

The trial of this case was held in January of 1977. In attempting to establish that the atmosphere in the community was so inflammatory and prejudicial that the appellants could not receive a fair trial in Dodge Superior Court, numerous newspaper articles printed in the Dodge County and Macon newspapers between April of 1975 and December of 1976 were introduced. We have reviewed these newspaper articles, and, with the exception of one, we find them neither inflammatory nor materially inaccurate.

This article, printed in the Macon Telegraph, stated that approximately one dozen people, who were helping law enforcement officials investigate bootlegging operations in Dodge County, disappeared during an 18-month period. Disgruntled Dodge County citizens wrote letters complaining to the Macon newspaper that this was not true. The Macon Telegraph issued a public retraction of the story and a public apology to the citizens of Dodge County.

We agree with the trial court that the appellants failed to show that the atmosphere surrounding the trial was such that they could not receive a fair trial. We conclude that the trial court did not err under either Georgia or federal law in denying the motion for change of

venue on this ground. See *Street v. State,* 237 Ga. 307 (1) (227 SE2d 750) (1976); Murphy v. Florida, 421 U. S. 794 (95 SC 2031, 44 LE2d 589) (1975).

Accordingly, we turn to the voir dire record of examination of prospective jurors in order to determine whether they had formed fixed opinions as to the guilt or innocence of the appellants. Of the 59 prospective jurors sitting on the traverse jury panel, seven jurors were excused for cause because they were too closely related to either the sheriff, who served as prosecutor, the Burnams, or appellant Clements; one prospective juror was excused for cause due to health reasons; and five prospective jurors were excused for cause because personal friendships between them and either the Burnams or the Clementses prevented them from being impartial. All of the 12 jurors chosen to serve on the petit jury, and the two alternate petit jurors, testified on voir dire that they could put aside what they had previously heard about the case and render a verdict based on the evidence. The appellants did not move to strike any of these jurors for bias or prejudice; nor did they exhaust their peremptory strikes.

We are well aware that if the atmosphere surrounding the trial is sufficiently inflammatory the court should disregard prospective jurors' statements of impartiality. See Murphy v. Florida, 421 U. S. 794, supra; Estes v. Texas, 381 U. S. 532 (85 SC 1628, 14 LE2d 543); Irvin v. Dowd, 366 U. S. 717 (81 SC 1639, 6 LE2d 751). The atmosphere surrounding this trial was not comparable to the situations in any of the above-cited U. S. Supreme Court cases.

We conclude that the trial court did not abuse its discretion in overruling the motions for change of venue. This enumeration of error is without merit.

5. In Clements' sixth enumeration of error, and Reaves' eighth enumeration of error, they complain that deputy sheriffs of Dodge County should not have been allowed to act as jury bailiffs, since the sheriff, who was named as prosecutor in the indictment and who played an active role in the case, was disqualified to act as the bailiff.

A sheriff, who is prosecutor, is disqualified to act as jury bailiff (*Griffin v. State,* 5 Ga. App. 43 (62 SE 685) (1908)), as is a deputy sheriff who is prosecutor. *Cooper v.*

*State,* 13 Ga. App. 697 (3) (79 SE 908) (1913). In *Morakes v. State,* 201 Ga. 425 (40 SE2d 120) (1946), the question was raised as to whether a disqualified sheriff was also ineligible to select jury bailiffs, but the question was not decided, since no objection has been made at trial. In the present case, an objection to the deputy sheriffs' serving as jury bailiffs was made at trial.

We hold that the eligibility of the deputy sheriffs to serve as jury bailiffs must be determined by looking to their own involvement in the trial (see Turner v. Louisiana, 379 U. S. 466 (85 SC 546, 13 LE2d 424) (1965); *Spooner v. State,* 56 Ga. App. 618 (193 SE 483)(1937)), and not that of the sheriff. Allowing deputy sheriffs to serve as bailiffs, even though the sheriff may be disqualified to act as bailiff because he is prosecutor, is not a situation involving an inherent likelihood that the defendant will be prejudiced. Compare Tumey v. Ohio, 273 U. S. 510 (47 SC 437, 71 LE 749) (1927). Therefore, we conclude that no reason is presented to reverse a conviction under these circumstances unless the defendant shows that his case was somehow prejudiced. No prejudice has been shown here. This enumeration of error is without merit.

6. In Clements' eighth and ninth enumerations of error, and Reaves' sixth enumeration of error, they argue that the trial court erred in allowing Hulett to testify as to certain statements Reaves had made to McDuffie, which were related to Hulett by McDuffie. They also contend that the trial court erred in admitting testimony of Carey Mizell Williams as to statements which Clements made to Hulett, which were related to Williams by Hulett.

Hulett testified as to what McDuffie had told him regarding conversations McDuffie had had with Reaves in arranging and contracting for Reaves to do the killings. As testified to by Hulett, Reaves had told McDuffie that he would commit the murders for only $3,000 because he planned to rob a bank in the vicinity at the same time.

Reaves' counsel filed a pre-trial motion to suppress this testimony on grounds of hearsay. The trial court overruled the motion and instructed counsel for Reaves to object to the testimony at the time it was introduced. Clements' defense counsel made an objection at the commencement of Hulett's testimony, also arguing that

this testimony was double hearsay. The trial judge refused to rule on the admissibility of any testimony in advance, and he told defense counsel that any objection would have to be made at the time the evidence was introduced.

At the time Hulett's testimony concerning Reaves' plans to rob the bank was introduced, it was objected to on the ground that it did not concern the plan to murder the Burnams and, therefore, was not in furtherance of the murder conspiracy. We hold that the trial court did not err in overruling this objection,- because, in our opinion, Reaves' plan to rob the bank showed why he accepted the $3,000 offer to murder the Burnams, i.e., it showed in part Reaves' motive in joining the murder conspiracy. Evidence of his plans to rob the bank was, therefore, relevant, and this evidence was admissible against Clements. *Knight v. State,* supra; *Johnson v. State,* supra.

By not raising the double-hearsay objection at the time the testimony was introduced, the appellants waived that objection. We hold that the trial court was authorized to require the appellants to raise their grounds for objection at the time the evidence was introduced. By not stating a ground for objection at that time, it was therefore waived.

In Reaves' motion for new trial, he made the argument that Hulett's testimony as to statements made by Reaves, which were related to Hulett by McDuffie, violated Reaves' rights under the Confrontation Clause of the Sixth Amendment. The trial court, citing Park v. Huff, 506 F2d 849 (1975), held that there were sufficient indicia of reliability as to the statements to justify their admission in evidence. We agree.

The appellants also complain of the action of the trial court in admitting certain testimony of Carey Mizell Williams which implicated Clements and McDuffie in the crimes.

The appellants did not make any objection to this testimony at the time it was given. Defense counsel cross examined Williams and then moved to exclude his testimony on the ground that it was not in furtherance of the murder conspiracy and on the ground that it was hearsay. This objection was raised too late. Any grounds

the appellants had for objecting to the testimony were apparent at the time it was introduced. They were therefore bound to make their objections at that time. These enumerations are without merit.

7. In Reaves' seventh and eleventh enumerations of error, he argues that the trial court erred in overruling his motion to dismiss for failure to grant a speedy trial and for violations of the Interstate Agreement on Detainers. Code Ann. Ch. 77-5B (Ga. L. 1972, p. 938 et seq.) (referred to hereinafter as the Agreement).

For a consideration of these enumerations of error it is necessary first to review the sequence of events leading to the appellant's trial:

Reaves was indicted on April 28, 1976. At that time, he was incarcerated in a federal penitentiary in Texas. On May 10, 1976, he filed a petition in United States District Court for the Eastern District of Texas, stating that he had been informed of murder charges against him in Georgia and praying that he be placed in the protective custody of federal marshals if he was returned to Georgia to stand trial. He was subsequently transferred to the federal penitentiary in Atlanta. He was first turned over to state authorities on September 1, 1976, when he was transported to Dodge County to be arraigned for the Burnam murders pursuant to a writ of habeas corpus ad prosequendum filed by the district attorney on August 24, 1976. On September 1, 1976, Reaves filed a motion to stay the proceedings against him because, he argued, his rights were being violated. On December 1, Reaves moved to dismiss the charges against him for failure to grant him a speedy trial; and on December 10, he moved to dismiss on grounds of violations of the Interstate Agreement on Detainers. On December 9, the district attorney filed another petition for writ of habeas corpus ad prosequendum to have Reaves returned to Dodge County on December 16 for the pre-trial motion hearings, at which Reaves had requested to be present. On January 4, 1977, another writ of habeas corpus ad prosequendum was filed, under which Reaves was returned to Dodge County on January 16 to stand trial for the Burnam murders beginning January 17th.

(a) The appellant argues that his trial did not begin

until 138 days after the State of Georgia first took custody of him. Therefore, he argues that the indictment against him should have been dismissed under Art. IV (c) of the Agreement (Code Ann. § 77-505b (c)), which provides: "In respect of any proceeding made possible by this Article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." The trial court overruled the appellant's motion to dismiss under Art. IV (c), finding that the delay occasioned by the pre-trial motions filed by the appellant provided good cause for tolling the 120-day time limit. We agree. Cf. *Price v. State,* 237 Ga. 352 (1) (227 SE2d 368) (1976).

(b) The appellant argues that there was a violation of the 30-day rule set out in Art. IV (a) of the Agreement (Code Ann. § 77-505b (a)) when he was transferred to the custody of Georgia authorities for arraignment, pre-trial motion hearings, and trial less than 30 days after the state had requested custody of him. Art. IV (a) provides, in pertinent part, that, ". . . there shall be a period of 30 days after receipt by the appropriate authorities before the request [for temporary custody or availability] be honored, within which period the governor of the sending State may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner."

The appellant was transferred to the custody of Georgia authorities for arraignment, pre-trial motion hearings, and trial, pursuant to a writ of habeas corpus ad prosequendaum filed by the district attorney after the appellant had been removed from Texas to Georgia by the lodging of a detainer under the Agreement. Once a detainer has been lodged against a prisoner and he has been removed from his original place of imprisonment to the receiving state, the issuance of a writ of habeas corpus ad prosequendum to compel his presence at trial is a "request for temporary custody" within the meaning of Art. IV (a). United States v. Mauro, 436 U.S. 340 (98 SC 1834, 56 LE2d 329) (1978). However, the 30-day rule in Art. IV (a) would appear to be inapplicable where the

United States of America is the sending state. We, therefore, find it inapplicable here.

(c) The appellant also argues that there was a violation of Art. IV (e) (Code Ann. § 77-505b (e)) when he was returned to the custody of federal authorities after being arraigned and after the pre-trial motion hearings without having been tried. Art. IV (e) provides that, "If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V (e) hereof [§ 77-506b] such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." We find that there has been no violation of Art. IV (e) here because trial was had on the murder indictments before the appellant was returned to his original place of imprisonment, Texas. Cf. *State v. Sassoon,* 240 Ga. 745 (242 SE2d 121) (1978).

(d) Nor do we find error in the trial court's overruling the appellant's motion to dismiss for failure to grant a speedy trial. The trial court found that the eight-month delay between appellant's indictment and trial was caused by compelling reasons, viz., appointing counsel to represent the appellant, acting on the appellant's pre-trial motions (including motions for continuance and to stay the proceedings), and trying the appellant's co-defendant, McDuffie, separately in order to avoid a potential Bruton violation. In addition, the trial court found that the appellant first put the state on notice that he was demanding a speedy trial on December 1, 1976.[1] He was tried approximately six weeks later. Taking into consideration the length of the delay, the reason for the delay, the prejudice to the defendant and waiver by the defendant (*Mays v. State,* 229 Ga. 609 (1) (193 SE2d 825) (1972); *Sullivan v. State,* 225 Ga. 301 (1) (168 SE2d 133) (1969)), we agree with the trial court that the appellant was not denied his constitutional right to a speedy trial. This enumeration of error is without merit.

---

[1]A copy of the habeas corpus petition, which the appellant filed in federal district court in Texas, was also filed in the Dodge Superior Court. The trial court found

8. In Reaves' eleventh enumeration of error and Clements' ninth enumeration of error, they argue that the trial court erred in refusing to allow Hulett to testify on cross examination whether he had reported gains made in the illegal liquor business to the IRS.

The appellants were allowed a thorough and sifting cross examination of Hulett. It was established on cross examination that Hulett had several prior criminal convictions and that he had made prior statements to the GBI inconsistent with his testimony at trial. In view of this, we find that the trial court's curtailment of Hulett's cross examination in the manner complained of was not an abuse of discretion. This enumeration is without merit.

9. In his seventeenth enumeration of error, Reaves argues that the trial court erred in allowing Hulett to testify, since Reaves had filed a demand for a list of witnesses and Hulett's name did not appear on the list furnished by the state, as required by Code § 27-1403, as amended by Ga. L. 1966, pp. 430, 431.

The trial court found that the defense was on notice that Hulett would be called as a witness by the state, since the court had previously ordered prior statements made by Hulett turned over to the defense at their request. The court found that Hulett's name had been inadvertently omitted from the state's list of witnesses. The state was allowed to add Hulett's name to the list, and the court ruled that the defense would be granted a continuance to prepare for Hulett's testimony if they desired.

Since the purpose of Code § 27-1403 is to ensure "that an accused is not confronted at trial with testimony against him from witnesses whom he has not had the opportunity to interview prior to trial," (*Hicks v. State,* 232 Ga. 393, 399 (207 SE2d 30) (1974)), and since the action taken by the trial court in this instance ensured

that the prayer for relief in this petition was for protective custody and not for a speedy trial. Accordingly, the trial court found that this petition did not put the state on notice that the appellant was demanding a speedy trial. The habeas corpus petition has been made a part of this record; we have reviewed it; and we agree with the trial court.

that this purpose would be subserved, we find no error here in allowing Hulett to testify. Cf. *Lingerfelt v. State,* 238 Ga. 355 (1) (233 SE2d 356) (1977); *Herring v. State,* 238 Ga. 288 (2) (232 SE2d 826) (1977). This enumeration of error is without merit.

10. In the eighteenth enumeration of error, Reaves argues that the trial court erred in failing to require the state to call as a witness the co-indictee, McDuffie, whose name appeared on the state's list of witnesses. It is not error by the state to fail to call a witness it has listed. *Looney v. State,* 240 Ga. 691 (3) (242 SE2d 86) (1978). This enumeration is without merit.

11. The remaining enumerations of error relate to the trial court's conduct of the proceedings during the pre-trial motion hearings and the case-in-chief and to the trial court's instructions to the jury. We have reviewed the jury charges, and we do not find them incorrect or erroneous for any of the reasons alleged. We find that, as to the trial court's conduct of the proceedings below, no abuse of discretion on the part of the trial court or harm to the appellants has been shown.

*Judgments affirmed. All the Justices concur, except that as to Divisions 2 and 6, Hill, J., concurs in the judgment only.*

ARGUED JUNE 20, 1978 — DECIDED SEPTEMBER 27, 1978 — REHEARINGS DENIED NOVEMBER 1 AND NOVEMBER 21, 1978.

*Duross Fitzpatrick, Smith & Harrington, Will Ed Smith,* for appellants.

*Phillip R. West, District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler, Assistant Attorney General,* for appellee.