44392. SLAUGHTER v. THE STATE.
44393. WILLIAMS v. THE STATE.
(355 SE2d 660)

MARSHALL, Chief Justice.

Charles V. Slaughter and Tiunta T. Williams were jointly indicted and tried for the murder of Jerome Johnson. They appeal their convictions of felony murder and malice murder, respectively, for which they were sentenced to life imprisonment.[1] We affirm.

Evidence was adduced as follows. The victim taught classes at Coan Community School in Atlanta, where Slaughter, Williams, and co-indictee Tara Lamar Smith attended. Smith took a drama course from the victim in the night-school curriculum. Smith had been to the victim's apartment once with the Coan School administrator, and had seen the victim's stereo and three VCRs. On January 20, 1986, Smith met with Don Brown (who has not been apprehended), Slaughter, and Williams, at the latter's house. The four of them discussed robbing someone, and Smith suggested the victim, Johnson.

They rode the MARTA train to a church near the MARTA Decatur station. There, Williams and Brown stole an old-model, beige Bu-

---

[1] The crime was committed on January 20, 1986. The jury returned its verdicts of guilty on December 18, 1986. Notices of appeal were filed by Williams and Slaughter on January 7 and 13, 1987, respectively. The transcript of the evidence was filed on February 12, 1987. The appeals were docketed in this court on February 24, 1987. On April 10, 1987, Slaughter's appeal was submitted for decision on briefs without oral arguments. Williams' case was orally argued on April 14, 1987.

ick automobile from the church parking lot by breaking out the back window and starting the automobile with a screwdriver. Williams drove, Brown sat in the front seat, and Slaughter and Smith sat in the back. Brown wore a hat which he found in the automobile.

They rode to the victim's apartment, where Smith identified the apartment, then drove around to the back parking lot. Smith stayed in the automobile, so that he would not be identified by the victim, while the others went to the door. The plan was for Slaughter to knock on the door and tell the victim that Slaughter had accidentally bumped into the victim's automobile. Williams and Brown would then come out with weapons. Williams carried a "large" pistol and Brown carried a .22 caliber automatic. Slaughter was unarmed.

Approximately two minutes after they got out of the automobile, Williams ran back, with pistol in hand, stating that he had shot the victim because the latter had grabbed him and scratched him on the face. Smith saw the scratch marks on Williams' right cheek. Williams and Smith drove off, and saw Slaughter and Brown running down the street approximately two blocks away. The four of them left the stolen car behind a club on Memorial Drive, then split up. Nothing was taken from the victim's apartment.

Beverly Johnson, the victim's sister, who lived upstairs from her brother, testified that she heard a noise in the stairwell and then saw an early-model, beige car speeding up the driveway with its lights off. She dialed her brother's telephone number, but got a "busy" signal. Soon afterwards, a neighbor summoned her to the victim's apartment, where she found her brother shot, lying on the kitchen floor, and the telephone receiver at his side. The victim told her that someone had come to his door and stated that he had hit the victim's automobile.

Atlanta police found the victim inside the front door, lying on the kitchen floor, with blood on the telephone and the surrounding area. They observed several TVs and VCRs. They recovered a brown cap under a bush in front of the building which was later identified as having come from the stolen automobile. The victim died in the hospital from internal bleeding due to a gunshot wound to the abdomen. A .38 or .357 caliber bullet was recovered from his body.

In June 1986, Smith confided in a counselor at Coan School, to whom he gave information about the shooting. The school administrator, upon being informed, interviewed Smith and called the police, to whom Smith gave pre- and post-custodial statements concerning the crime, identifying Williams as the trigger man and Slaughter and Brown as co-participants with Smith in the crime.

1. Both appellants enumerate as error the denial of their motions for directed verdict of acquittal, contending that there was no evidence corroborating the testimony of co-conspirator and accomplice Smith, without which testimony there was insufficient evidence to au-

thorize their convictions.

"While a defendant may not be convicted on the uncorroborated testimony of an accomplice, OCGA § 24-4-8 (Code Ann. § 38-121), ' "(s)light evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict." ' *Castell v. State*, 250 Ga. 776, 780 (301 SE2d 234) (1983), citing *Reaves v. State*, 242 Ga. 542 (250 SE2d 376) (1978)." *Hardin v. State*, 252 Ga. 99, 100 (4) (311 SE2d 462) (1984).

The corroborative evidence here consists of physical evidence and testimony. Smith testified that a beige automobile was stolen in Decatur by Slaughter and Brown; a vehicle of that color was identified by the victim's sister as leaving the crime scene at a high rate of speed with the lights off, shortly after she heard some noises outside. Smith testified that Williams and Slaughter went to the victim's door because Smith knew the victim and would be recognized; the victim stated that he did not recognize the assailants. Smith testified that the ruse which was to be employed to gain entry into the victim's apartment for the purpose of the robbery was the staged automobile accident; the victim reported to his sister that someone had come to his door, said they had hit his car, and wanted to give him their insurance number. Smith testified that Brown took a hat from the stolen automobile; the hat was identified by Smith in a photograph taken in front of the victim's apartment. Smith testified that Williams possessed a "large" gun; the bullet recovered came from a large caliber gun — either a .38 or a .357. Smith testified that Williams stated that he fired at close range when the victim scratched Williams on the face; the victim was shot at close range, at a front-to-back and downward angle. Smith's prior, consistent, out-of-court statements were substantive evidence of the appellants' involvement in the crime. See *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985), citing *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982). The evidence of the prior consistent statements, if corroborated independently, would have been sufficient for a conviction. *Davis v. State*, 178 Ga. App. 760 (2) (344 SE2d 730) (1986); *McCauley v. State*, 177 Ga. App. 426 (1) (339 SE2d 399) (1986). The evidence independent of Smith's out-of-court statements constituted sufficient corroboration to support the verdicts.

We find the evidence produced at trial, including Smith's corroborated testimony, sufficient to have authorized a rational trier of fact to conclude that the appellants were guilty beyond a reasonable doubt of the murder of Jerome Johnson. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant Williams contends that his motion for severance was improperly denied. He argues that his defense was antagonistic to

that of his co-defendant, whose statement he was deprived of having admitted for the purpose of cross-examining co-indictee Smith as to his previous inconsistent statement. However, there was no abuse of discretion in the denial of severance, because the defenses were identical, not antagonistic (neither defendant presented any defense). Appellant Williams was not harmed thereby, because he had been able to use all of Smith's statements to impeach Smith, and because co-defendant Slaughter's could not impeach Smith, since Smith neither gave nor adopted that statement.

3. Appellant Williams enumerates as error the trial court's instruction to the jury that "if you find the evidence is evenly balanced upon any issue in the case, then in such event it would be your duty to resolve such issue against the party having the burden of proof upon such issue." He contends that this could have led the jury to believe that he did not have to be proved guilty beyond a reasonable doubt. However, although the appellant made numerous objections to other portions of the charge, he neither objected to this instruction nor reserved the right to object on motion for new trial or on appeal. Even though counsel stated that he had "kept meticulous notes," none of which led him to object to this instruction. Under these circumstances, the objection has been waived. *Rivers v. State*, 250 Ga. 303, 308 (7) (298 SE2d 1) (1982) and cit.

4. Appellant Williams enumerates as error the failure to give his requested charge, that "insofar as the participation and identity of the accused is concerned, the testimony of a defendant must be independently corroborated by evidence which tends to connect the accused with the crime." The trial court gave a full and complete charge on corroboration in accordance with OCGA § 24-4-8; therefore, there was no error in failing to give the requested charge. *Edwards v. State*, 255 Ga. 149 (1) (335 SE2d 869) (1985) and cits.

*Judgments affirmed. All the Justices concur.*

DECIDED MAY 19, 1987.

*J. Robert Joiner*, for appellant (case no. 44392).
*William R. Gignilliat III*, for appellant (case no. 44393).
*Lewis R. Slaton, District Attorney, H. Allen Moye, Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant Attorney General,* for appellee.