### 32179. KNIGHT et al. v. THE STATE.

Bowles, Justice.

This is an appeal from the Ben Hill Superior Court following the conviction of both defendants for the offense of armed robbery, in which one victim was severely beaten. Defendants filed identical motions for judgment notwithstanding the verdicts, or in the alternative, for new trials. The motions of both defendants were overruled and the appeal here is from those rulings. Both defendants were sentenced to 15 years.

We affirm.

1. Enumerations of error Nos. 1, 2, 3 and 9 address themselves to the general grounds. Both defendants contend that the trial court erred in not granting their motions for directed verdicts of acquittal; their motions for judgment notwithstanding the verdicts of guilty; and their motions for new trial. All questions require an examination of the evidence.

We have carefully reviewed the evidence, and although there are sharp conflicts, the jury chose to believe the witnesses for the state, and with that we must consider the same in the light most favorable to support the verdicts rendered. *Harris v. State,* 234 Ga. 871, 873 (218 SE2d 583) (1975). The rulings of the lower court, approving the verdicts will not be disturbed unless they are not supported by any evidence, as a matter of law. *Harris v. State,* 236 Ga. 766 (225 SE2d 263) (1976); *Myers v. State,* 236 Ga. 677 (225 SE2d 53) (1976); *Fleming v. State,* 236 Ga. 434 (224 SE2d 15) (1976); *Proctor v. State,* 235 Ga. 720 (221 SE2d 556) (1975).

Both appellants argue that their guilt, if proven at all, was proven only by the testimony of a witness who was unworthy of belief because of his numerous brushes with the law. The credibility of a witness is a matter which is left to the jury to resolve. *Rini v. State,* 236 Ga. 715 (225 SE2d 234) (1976); *Carruth v. State,* 232 Ga. 644 (208 SE2d 464) (1974). The witness Taylor's identification of the

appellants as two of the robbers provided direct evidence of their guilt, which the jury could believe, and they chose to do so. *Ward v. State,* 233 Ga. 251 (210 SE2d 772) (1974); *Andrews v. State,* 232 Ga. 423 (207 SE2d 61) (1974). Eyewitness Taylor's description of the robbery scene is consistent with the testimony given by the robbery victims. Even though the money from the robbery and the guns used by the robbers to carry out their plan were never recovered, the corpus delicti of a robbery was sufficiently established. *Mydell v. State,* 238 Ga. 450 (233 SE2d 199) (1977).

For these reasons the aforementioned enumerations of error are without merit.

2. Appellants' enumeration No. 4, complaining that the trial judge erred in admitting into evidence over objection, certain testimony regarding threats originally made by an alleged co-conspirator not on trial to one of the victims some three months before the crime occurred, presents a more difficult question. The testimony objected to was elicited from one of the owners of the business where the robbery occurred, and involved a conversation he had with Tracy Ryan a co-indictee whose trial was severed. It had been established at that point in the trial that Ryan was a former employee of the business and the specific question asked by state's counsel follows: "Q. Did Tracy Ryan, Jr. ever make any threats against you. A. Yes, he did." Defendants' counsel objected as follows: "I object to that question, your Honor, on the ground that it calls for a conclusion and also on the ground it calls for hearsay. The ground of my objection . . . well, first of all, the question calls for a conclusion; it would be a conclusion on the part of the witness to say what Tracy Ryan might have said to him, what he . . . whether or not that would have been a threat. That would be clearly a conclusion on the part of the witness. If that were cured by asking him specifically what did he say that would be hearsay."

Defendants' counsel in his argument to this court points out there had been no evidence of a conspiracy presented up to that time. Further, that the prosecution was attempting to use the hearsay evidence to show a conspiracy, and to show an involvement between Ryan and the other two defendants on trial. He contends that

the state must show a conspiracy existed when these remarks were made before they can be admissible against the other two defendants in a separate trial.

The court overruled the objection and allowed the witness to testify. The witness then testified that co-indictee Ryan, upon being discharged because of his failure to do his work properly, told the witness, "If I wanted the silverware I could get it myself." With this the witness told Ryan he could "punch the clock and go." The witness then testified that Ryan came rushing over like he was fixing to grab him and kill him and said, "I'll get you, I'll get you, I'll get you." "He said to me, he said, you [expletive deleted] and said I'll get you." Said "Don't you never be on the street." Defendants' counsel renewed his objection and moved to strike that response on the grounds that it contained hearsay and on the grounds of relevancy. The court again overruled the objection.

The trial court acknowledged that the testimony was prejudicial and we agree. Most testimony against an accused is prejudicial but we must determine whether or not it was admissible.

In *McCluskey v. State,* 212 Ga. 396 (1) (93 SE2d 341) (1956), this court held: "A conspiracy not being shown prima facie, it was error to admit in evidence declarations of a co-defendant and to charge the jury the law as to principals in the first and second degrees." See *Kennemore v. State,* 222 Ga. 362 (2) (149 SE2d 791) (1966); *Fleming v. State,* 236 Ga. 434, 441 (224 SE2d 15) (1968).

In order to properly admit the declaration of a co-conspirator made pending the criminal project, there must be sufficient evidence aliunde the declaration to establish the conspiracy at least prima facie and prove its existence beyond a reasonable doubt. But the trial judge having sound discretion as to the order of proof, if a prima facie case of conspiracy is shown from the whole evidence, does not err in admitting such a declaration. *Wortham v. State,* 184 Ga. 674 (192 SE 720) (1937). The order of proof is in the sound discretion of the court. See *Fallings v. State,* 232 Ga. 798 (209 SE2d 151) (1974), citing *Coleman v. State,* 141 Ga. 731, 733 (82 SE 228) (1914).

Other evidence introduced showed that the three defendants, on the night in question, were together at the

same time that the robbery occurred, participated therein, and immediately fled together. This is sufficient for the jury to consider under proper instructions from the court, whether or not a conspiracy existed between them.

We get down to the critical question as to whether or not the declarations of Ryan, made three months prior to the night of the robbery under investigation, would be admissible against the other two over their objection that such declarations were hearsay and irrelevant.

The federal rule regarding the admission of hearsay evidence as to statements of a co-conspirator is stated in the Federal Rules of Evidence, Rule 801 (e) which provides that any statement by one co-conspirator made in *furtherance of the conspiracy and during its pendency* is admissible against each co-conspirator provided that a foundation for its admission is laid by independent proof of a conspiracy. Thus, under the federal rule, in order for such evidence to be admissible, one must first establish that the declaration was made in *furtherance of the conspiracy* and, secondly, establish that the declaration was made *during the pendency of the conspiracy.*

Many state jurisdictions, either by statute or case law, have adopted variances of the co-conspirator rule. These variances fall into several categories. Some require that the evidence "relate to the conspiracy" (e.g., Cal. Code Civil Practice § 1870 (6)) while others require only that statements be made *"during the pendency of the criminal project."* Georgia follows this latter variance and by statute provides, "After the fact of conspiracy shall be proved, the declarations by any one of the conspirators during the *pendency of the criminal project* shall be admissible against all." Code Ann. § 38-306. (Emphasis supplied.)

In regard to post-conspiracy statements, if the conspiracy contemplates actions beyond an initial criminal act such as concealment, the conspiracy is deemed in progress until its ultimate purpose is accomplished, and admissions made by one conspirator while attempting to conceal the case may be admissible against the other conspirators. Dutton v. Evans, 400 U. S. 74 (1970). This is the Georgia rule. *Crowder v. State,* 237 Ga. 141 (227 SE2d 230) (1976); *Evans v. State,* 222 Ga. 392

(150 SE2d 240) (1966); *Chatterton v. State,* 221 Ga. 424 (144 SE2d 726) (1965);*Burns v. State,* 191 Ga. 60 (11 SE2d 350) (1940).

In regard to pre-conspiracy statements, the requirement of pendency under the Georgia statute presents a unique problem. The conspiracy begins with the criminal agreement, but the point in time of its formation may be difficult to place, particularly if the agreement may be inferred retroactively from a series of overt acts. Conspiracy is often formed in secret, and therefore, the date of its initial formation is oftentimes difficult, if not impossible to prove. In this case, we know on the night in question, there are three parties acting in concert who flee together after carrying out a criminal enterprise. We can infer that the conspiracy was in existence at that particular time, and from human experience we can reasonably consider it was in existence prior to that time. How much prior is an open question.

In Georgia we have found no judicial opinions that have discussed pre-conspiracy statements made by one of the co-conspirators. Other jurisdictions have dealt with the question of their admissibility. Massachusetts, for example, allows the admission of pre-conspiracy hearsay declarations. In the case of Commonwealth v. Beal, 314 Mass. 210, 227 (50 NE2d 14) (1943), the Massachusetts Supreme Court stated: "Unless too remote, acts and transactions prior to the alleged date of the commencement of a conspiracy are relevant. The date where a conspiracy is alleged to have begun is not, in fact, a wall behind which the court and jury may never look for the purpose of discovering facts that have a bearing upon the fact of the conspiracy itself. The Commonwealth had a right to show the whole history of the conspiracy from its commencement to its consummation. Such evidence as was admitted is like the evidence which always has been held to be competent that one charged with a crime had made preparation for its commission, or had by word or deed manifested an intention to commit that crime."

On much the same rationale of relevancy and practicality, other states have also permitted admission of pre-conspiracy hearsay. In Ross v. State, 98 Tex. Crim. 567 (267 SW 499) (1925), the court allowed the in-

troduction of a statement made by one conspirator prior to the conspiracy as against his co-conspirators. The court stated: "The rule laid down by this court . . . that when the proof shows two persons were acting together with an unlawful intent in the commission of an offense, the common design and acting together makes them ipso facto conspirators; and that the previous acts and declarations of each or any such principal offender, in pursuance of the agreed plan, tending to throw light upon it, or the motive or intent with which it was committed is and should be received as legal evidence against each and all, whether indicted, prosecuted and tried jointly or separately, not only still obtains, but has been extended in the light of more recent decisions, which hold that on a trial for murder where a conspiracy is shown, the acts and declarations of co-conspirators are admissible to prove the common design, purpose and intent of all the conspirators, whether such acts, were made before or after the formation of the conspiracy, or whether the same were made before the defendant on trial entered into the conspiracy."

Conceivably, the criminal project referred to in the Georgia statute includes the creation of the original motive to commit the crime, the plan to commit it and the carrying out of the plan. The motive and the plan could be created first in the mind of only one of the co-conspirators and prior to the formation of the conspiracy itself. One party could have a motive or an intent to commit a crime for a substantial period of time before he obtains another or others to join with him in a conspiracy to carry it out. Can we then say that pre-conspiracy declarations, of that defendant, illustrating motive are not admissible in the trial of one of his co-conspirators whom he may have persuaded to help him carry out his motive? To do so would not be logical. In our opinion, this is one reason for the Georgia rule being broader than the federal rule (Code Ann. § 38-306).

We also have in this case the additional question as to whether or not the jury could find that the conspiracy existed for some reasonable period of time prior to the date that it is reasonably known to have existed.

In our opinion, the better rule would be to allow the

declarations made by one conspirator to be admissible in the trial of another co-conspirator even though there is no clear proof there was a conspiracy in existence when made. Such declarations would be relevant for the purpose of establishing motive or intent, and would not unduly prejudice the alleged co-conspirator who may have later joined the declarer in the criminal project.

3. Enumeration No. 5 complains that the trial court erred in failing to direct the jury to disregard the testimony of threats allegedly made by co-defendant Ryan to a witness unless they first found from the evidence aliunde such testimony, that a conspiracy existed at the time the remarks were allegedly made.

The court's charge in this respect said: "I charge you that certain testimony was admitted in evidence from witness Morehead relating to statements made to the witness by one Tracy Ryan, one of the three persons indicted in this indictment but who is not now on trial, which statements related to and arose out of the termination of employment of Tracy Ryan. In that connection, now, I charge you that you shall disregard such testimony unless you also find from the evidence *in the trial* that a conspiracy existed among the three defendants, Ryan, Paul and Knight, to commit the crime alleged in the indictment and that the statement or statements, if any, of Tracy Ryan were made during the pendency of the criminal project or conspiracy and connected therewith. It is for you to determine whether or not a conspiracy existed at the time, whether or not the statement or statements were made and whether made in connection with the criminal project or conspiracy." At this point the court then charged the legal definition of a conspiracy.

The question presented is whether or not the charge as given by the court left the jury believing that they could find a conspiracy existed *"from the evidence in the trial"* which would include the statements of the co-defendant objected to, as against charging them that they would have to first find that a conspiracy existed from evidence otherwise introduced in the trial of the case. Appellant made no written request to charge in this connection.

The statements admitted in evidence and at-

tributable to a co-indictee not being tried did not in any way refer to, indicate, or support proof of a conspiracy. On the other hand there was direct evidence by an eyewitness that the three defendants were seen together in the perpetration of the crime. Under the facts of this case the charge of the court complained of was not error. For cases holding that if a prima facie case of conspiracy is shown on the whole evidence, admitting evidence of acts and declarations of one of the alleged conspirators is not error, see *Coleman v. State,* 141 Ga. 731, 733 (82 SE 228) (1914); *Hutchins v. State,* 229 Ga. 804 (194 SE2d 442) (1972); *Fallings v. State,* 232 Ga. 798 (1) (209 SE2d 151) (1974).

4. Enumeration No. 6 contends that the trial court erred in permitting the state to impeach its own witness, Otis Robinson, Jr. Under the showing made by state's counsel and our holdings in *Wilson v. State,* 235 Ga. 470 (219 SE2d 756) (1975); *McNeese v. State,* 236 Ga. 26 (222 SE2d 318) (1976), and *Aldridge v. State,* 236 Ga. 773 (225 SE2d 421) (1976), we conclude that the trial court did not abuse its discretion in permitting counsel for the state to cross examine the witness and to introduce prior conflicting statements allegedly made by him.

5. Enumerations 7 and 8 complain that the trial court erred in failing to properly instruct the jury regarding the limited extent to which they could consider evidence of prior inconsistent statements during the jury charge.

Before the court permitted the prior inconsistent statements to be introduced in evidence it instructed the jury as follows: "Ladies and gentlemen of the jury, the court instructs you at this time that any statement that this witness may be about to testify to as given to him by another person will be considered by you only for the purpose of impeachment, that is, as to the credibility you shall give the testimony of the other witness, *not as to the truth of what the statement contains* that was made outside of this court."

Defendants' counsel filed a written request to charge in the following language: "(2) The testimony of a witness may be discredited or impeached by showing that he previously made statements which are inconsistent with his previous testimony. The earlier contradictory

statements are admissible only to impeach the credibility of the witness, *and not to establish the truth of these statements*. It is the province of the jury to determine the credibility, if any, to be given the testimony of a witness who has been impeached. If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony in other particulars; and you may reject all the testimony of that witness or give it such credibility as you may think it deserves. An act of omission is 'knowingly' done if done voluntarily and intentionally, and not because [of] a mistake or accident or other innocent reason."

The court did not give the requested charge in the words requested, but did generally charge on the subject.

Appellant argues that the court's omission to charge in any fashion that part of his request "and not to establish the truth of these statements" is erroneous, citing *Watts v. Starr,* 86 Ga. 392 (12 SE 585) (1891).

This is an important aspect of this case because the state introduced the testimony of a police officer to whom the impeached witness is alleged to have stated the names of the three defendants involved in the robbery, within a short time following the robbery, and such a statement coming from a police officer could have been given great weight by the jury. They could have believed that the statement established the truth of the matter. If the jury did so consider this hearsay evidence without any instructions to the contrary, it could well have been prejudicial to the defendant's case.

On the other hand, the court gave adequate instructions in this regard before the evidence was introduced. Thus we have adequate instructions at one point in the trial of the case, and although requested, an incomplete instruction in the final charge.

This impeaching evidence though having no probative value otherwise, was cumulative of other direct evidence on the same fact, by another witness in the case.

Assuming, without deciding, the trial judge's failure to give that portion of the charge as requested was error, when we consider the totality of the court's instructions in the light of all the evidence admitted in the case, we find no error.

*Watts. v. Starr,* supra, cited by the appellant, is a case wherein Chief Justice Bleckley said, "Though declarations made out of court by a witness may be used to impeach the witness, they cannot be treated as substantive evidence to establish the facts which they affirm; and a charge of the court so treating them, whether expressly or by necessary implication, is erroneous. Such a charge is vicious as based on an assumed state of facts, where this class of declarations is the only evidence to which it could apply."

The trial judge in the instant case did not go nearly so far. He gave a complete and accurate charge on the subject matter of impeachment. He merely failed to go forward in his final charge to the jury and cover defendants' requested point, "The earlier contradictory statements are admissible only to impeach the credibility of the witness, *and not to establish the truth of these statements."*

Justice Lumpkin in *Stallins v. Southern R. Co.,* 140 Ga. 55, 58 (78 SE 421), recognizing the rule, said: "It is the better practice for the presiding judge to instruct the jury as to the purpose for which evidence admitted solely to impeach a witness, such as statements made out of court conflicting with his testimony, may be considered. But it cannot be laid down as a general rule that an omission to do so will necessitate a reversal."

In the instant case, the judge gave adequate instructions to the jury before the evidence was ever admitted, which instructions are quoted above. Whether or not it was necessary to again give these instructions in the final charge, at the close of all of the evidence we do not find necessary to decide. Direct instructions having been previously given, error if any, in not repeating these instructions in the final charge, in our opinion, is harmless error. *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976).

*Judgment affirmed. All the Justices concur.*

Submitted April 8, 1977 — Decided September 8, 1977.

*John Edward Smith, III,* for appellants.
*D. E. Turk, District Attorney, Arthur K. Bolton,*

*Attorney General, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.