35588. HARDY v. THE STATE.

CLARKE, Justice.
Kenneth Hardy was convicted for the murder of Lewis J. Ingram in Banks County, Georgia, and was given a death sentence.

*Summary of Facts*

From the evidence presented at the trial, the jury was authorized to find the following facts.

Driving his pickup truck, the 60-year-old victim, Lewis J. Ingram, left his home in Thomasville, North Carolina, on July 26, 1977, en route to Commerce, Georgia, for the purpose of visiting relatives and friends. Upon arriving in Commerce, he visited his sister and spent one night in her home. The following day, he moved into a motel near Commerce and for the next four days spent a great part of his time at Willie Brown's Produce Stand on Highway 441 near Commerce. During the hours spent at the produce stand, the victim became acquainted with those persons who were operating the business and had the opportunity of talking with old acquaintances from Commerce, which was his boyhood home.

Upon leaving North Carolina, the victim had in his possession more than $1,000, mostly in one hundred dollar bills. His possession of a number of bills in large denomination became quickly known by several people. On the first night he was in Commerce, his sister saw the money he was carrying. An employee of the motel where he was staying also noticed a large amount of bills on the nightstand in his motel room. During his visits at Willie Brown's Produce Stand, the victim made several purchases from Dub Hardy, an employee at the stand, but did not pay for the purchases at the time because Mr. Hardy was unable to change the large bills being carried by Mr. Ingram. Dub Hardy is the father of the appellant in this case. Both he and his wife, Mary, worked at the produce stand.

During most of the time Mr. Ingram spent at the produce stand, he had exhibited indications of having consumed alcoholic beverages. On Saturday, being the fourth day of his visits at the stand, the victim met a number of people at the stand, including Dub and Mary Hardy, Billy Hardy, Carolyn Hardy, Edwin and Patsy McGill and Buster and Betty Minish. By the late afternoon, the victim was showing the effects of having consumed a considerable amount of alcohol. During Saturday evening, the victim, along with Buster Minish, left the produce stand to play poker at Billy Hardy's trailer. Buster Minish drove the victim's truck and his wife, Betty Minish, followed in another vehicle. Billy Hardy's trailer is situated only a few yards from the home

of Dub Hardy. Billy Hardy and Kenneth Hardy, the appellant here, are sons of Dub and Mary Hardy. Betty Minish is the wife of Buster Minish and a cousin of Mary Hardy. When Dub and Mary Hardy arrived at their home, Lewis Ingram's truck was located in the yard next to Billy Hardy's trailer. Mary Hardy became concerned that trouble was about to develop and urged Dub Hardy to get the victim out of the trailer. The victim, Buster Minish and the appellant, who had arrived upon the scene, had been arguing. Dub Hardy went to his son's trailer and found the victim on a couch in a very drunken state. He took the victim by the arm and led him to the door where he missed one of the steps and fell into the yard. The appellant then attacked the victim with a wrench wrapped in a rag and severely beat him about the head. Dub Hardy made an attempt to stop the fracas but was restrained by Buster Minish. At this point the appellant got a shotgun and he, together with Billy Hardy and Buster Minish took the victim into the woods where appellant attempted to force the victim to tell where his money was. This attempt was not successful. Having failed in this effort, appellant and his companions brought the victim back to the yard and put him in the back of his own truck where he was joined by appellant. Billy Hardy drove the victim's truck and Buster Minish followed in another vehicle for a distance of some ten miles to a secluded area. At some point, gasoline was poured on the victim and there is evidence that the victim begged, "Please don't pour that gasoline on me."

Appellant shot and killed the victim and then his body was burned, along with the truck.

The shotgun was thrown into a lake from which it was later recovered and ballistic tests determined the shotgun to have been the murder weapon. Upon returning to the Billy Hardy home, Billy and Kenneth Hardy, as well as Buster Minish, were seen to have blood on their clothing and a considerable amount of blood was on the ground in the yard near the Billy Hardy home.

On the following day, Billy Hardy and Minish, together with Minish's wife planned the story to be told by each of the parties in order to avoid implication in the murder. During the early morning hours of Sunday just

following the murder, Buster Minish told his wife that the pickup truck in which the victim and Kenneth Hardy were riding went across a little bridge and one shot went off and as they went up the road farther, there was another shot. At this point, Billy Hardy jumped out of the truck and dragged Kenneth Hardy out of the back and said "You ain't got no damn sense. You didn't have to do that." Buster Minish also at this time told his wife that Kenneth Hardy fired the shot which killed the victim.

A few days later, Buster Minish committed suicide.

### Enumerations of Error

1. In his first enumeration of error, the appellant complains of a failure on the part of the trial court to exercise its discretion as required by law. The investigating officer was allowed to remain in the courtroom after the rule of sequestration had been invoked but was not required to be the first witness to testify. Appellant does not argue that the trial court abused his discretion in allowing this to occur. See *McNeal v. State,* 228 Ga. 633 (187 SE2d 271) (1972). Instead it is argued that the trial court did not use its discretion at all but rather decided as a matter of policy that the officer could be called to testify at such time as the prosecutor pleased. *Stuart v. State,* 123 Ga. App. 311 (180 SE2d 581) (1971). In *Stuart,* it was held that the trial court should exercise its discretion both as to permitting exceptions to the sequestration of witnesses and as to the sequence of calling unsequestered witnesses. The exercise of the trial court's discretion should be based upon a showing that the state has some need not to call the unsequestered witness as the first to testify.

In the instant case, the state requested that GBI agent Pat Patterson be allowed to remain in the courtroom for the purpose of assisting the district attorney in the trial of the case. The state went further and stated, "his testimony will all be from investigation and nothing in the chronological order of the evidence we present." Appellant's attorney then objected to the witness being allowed to stay in the courtroom unless he be required to testify first. The court overruled the objection and in response to further argument of defense

counsel on the point, the trial judge stated ". . . because I'm not going to dictate to the state in which manner the state introduces its evidence." The orderly presentation of evidence being a proper reason for an exception to the rule of sequestration, and the trial judge having based his ruling upon this exception, we find no error. *McNeal v. State,* supra.

2. The state called Mary Hardy who testified as to statements made to her by Billy Hardy which incriminated the appellant. She testified that upon his return from the murder scene, Billy Hardy told her that the appellant had "cut the victim all to pieces." Furthermore, the state offered the testimony of Betty Minish consisting of statements made to her by her now deceased husband the day after the killing. In these statements, Minish named appellant as the person who shot the victim. Attorney for appellant objected to the testimony of both witnesses on the grounds that the statements were hearsay. Appellant argues in his second and third enumerations of error that the trial court committed reversible error in overruling his objections and admitting the statements.

"After the fact of conspiracy shall be proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." Code Ann. § 38-306. The conspiracy is deemed in progress until its ultimate purpose is accomplished. It may include acts performed and declarations made after the commission of the crime. Conspiratorial efforts to conceal the fact of the crime and the identity of the perpetrators are a continuation of the conspiracy so that the parties to such a conspiracy would be considered so much of a unit that the declarations of either are admissible against the other. *Crowder v. State,* 237 Ga. 141 (227 SE2d 230) (1976); *Evans v. State,* 222 Ga. 392 (150 SE2d 240) (1966); *Chatterton v. State,* 221 Ga. 424 (144 SE2d 726) (1965).

There was evidence sufficient to establish a prima facie case of conspiracy to rob and kill the victim and thereafter conceal the murder. The statements of Billy Hardy and Buster Minish were made during the pendency of the conspiracy in that the concealment phase of the

conspiracy was plainly pending.

Appellant argues however that even though the conspiracy had not ended, the statements lack the "indicia of reliability that would afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement" which is required for admissibility. Dutton v. Evans, 400 U. S. 74 (91 SC 210, 27 LE2d 213) (1970); Mancusi v. Stubbs, 408 U. S. 204 (92 SC 2308, 33 LE2d 293) (1972); *Mooney v. State,* 243 Ga. 373 (254 SE2d 337) (1979). We do not agree. The indicia of reliability required for admissibility are that the statements be non-narrative; that the declarant is shown by the evidence to know whereof he speaks; that the witness is not apt to be proceeding on faulty recollection; and that the circumstances show that the declarant had no apparent reason to lie to the witness. *Mooney v. State,* supra. It is not required that all of the indicia be present for the statement to be admissible. Mancusi v. Stubbs, supra; *Mooney v. State,* supra. The final three indicia are present in the instant case.

It is undisputed that both the declarants were present at the scene of the murder and knew of the facts. It cannot be said that either witness, the mother of appellant or the wife of a co-conspirator was apt to be proceeding on faulty recollection. While Mary Hardy was a reluctant witness, she had given a statement five days after the crime which confirmed her testimony. The testimony of Betty Minish was positive and direct. The declarants had no apparent reason to lie to the witnesses. Both statements were inculpatory in that they placed the declarants at the scene of the actual murder. Furthermore, Billy Hardy's statement was spontaneous and given immediately after the crime. Buster Minish's statement was made before coaching his wife as to an alibi story to present to the authorities in case they were questioned.

The admission of the statements made by Billy Hardy and Buster Minish was authorized by Code Ann. § 38-306. Appellant's enumerations of error 2 and 3 are without merit.

3. Appellant in his fourth enumeration of error contends the trial court erred in failing to charge the jury

on the law of voluntary manslaughter. Appellant relies on the testimony of Dub Hardy that he heard the victim, the appellant and Buster Minish arguing. The record is not clear as to who was arguing with whom; however, it is clear that nothing more than words were passed and no threats were heard. It should also be noted that the arguments occurred prior to Dub Hardy taking the victim out of the trailer. According to Dub Hardy, the victim was in a drunken state and fell to the ground as he left the trailer. See *Hill v. State,* 236 Ga. 703 (224 SE2d 907) (1976). In order to warrant a charge of voluntary manslaughter, the evidence must not only show an act of violent passion, but also some serious provocation sufficient to excite such passion in a reasonable person. *Sivett v. State,* 242 Ga. 228 (248 SE2d 629) (1978); *Smith v. State,* 49 Ga. 482 (1873). We conclude from a study of the record that the evidence did not warrant a charge on voluntary manslaughter. Code Ann. § 26-1102; *Lowe v. State,* 240 Ga. 767 (242 SE2d 582) (1978). Furthermore, there was no written request to charge voluntary manslaughter. *Duggers v. State,* 244 Ga. 160 (259 SE2d 133) (1979); *Morgan v. State,* 240 Ga. 845 (242 SE2d 611) (1978); *State v. Stonaker,* 236 Ga. 1 (222 SE2d 354) (1976).

4. In his fifth enumeration of error, appellant contends there was a denial of due process of law as a result of the prosecutor reading from *Eberhart v. State,* 47 Ga. 609 (1873). Prior to his opening argument, the prosecutor quoted to the court Code Ann. § 26-1101 and read dicta from *Eberhart.* Our review of that portion of the record reveals that in reading these passages, the prosecutor did not identify the judge who wrote them, the court which decided the case nor did he make any comments as to the outcome of the case. *Godfrey v. State,* 243 Ga. 302 (253 SE2d 710) (1979); *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977). This court has previously stated its disapproval of the reading of certain passages from *Eberhart* and this same disapproval is reiterated here. However, we have held it not to be error under the circumstances of this case. *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979); *Drake v. State,* 241 Ga. 583 (247 SE2d 57) (1978); *Campbell v. State,* 240 Ga. 352 (240 SE2d 828) (1978).

*Sentence Review*

The remaining enumerations of error address themselves to the sentence and are best covered by the sentence review mandated by Code Ann. § 27-2537(c)(1-3).

5. Appellant assigns error by reason of the fact that the prosecuting attorney was allowed to read to the court dicta from the case of *Hawkins v. State,* 25 Ga. 207 (1858) prior to his argument to the jury on sentencing. It is contended that this resulted in the imposition of the death penalty under the influence of passion, prejudice and other arbitrary factors. *Hawkins v. State* contains dicta similar to *Eberhart v. State,* supra. While this court has condemned such practice, *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977), we have held it not to be error under the circumstances here. *Drake v. State,* supra; *Ruffin v. State,* supra; *Godfrey v. State,* supra. Furthermore, we find the evidence against the defendant to be so overwhelming that the reading to the court in the presence of the jury of the dicta referred to could not have injected an improper element of passion, prejudice or other arbitrary factor. *Bowen v. State,* 244 Ga. 495 (260 SE2d 855) (1979). Appellant's seventh enumeration of error is without merit.

After reviewing the entire record and transcript, we conclude that the sentence of death imposed on Kenneth Hardy was not imposed under the influence of passion, prejudice or any other arbitrary factor.

6. The trial court charged the jury in the sentencing phase that it could consider two aggravating circumstances. One, that the offense of murder was outrageously or wantonly vile, horrible or inhuman, in that it involved torture, depravity of mind or an aggravated battery to the victim. Code Ann. § 27-2534.1 (b) (7), and, two, that the offense of murder was committed while the offender was engaged in the commission of a robbery.

In his sixth enumeration of error, appellant contends it was error to charge as an aggravating circumstance that the offense was committed while the offender was engaged in a robbery. We do not agree. The statute allows the trial court to charge statutory and non-statutory aggravating

circumstances. Code Ann. § 27-2534.1 (b). While the jury would not be authorized to impose the death penalty based on a finding as to the non-statutory aggravating circumstance, they were authorized to consider it in arriving at their verdict. The jury returned its verdict finding, beyond a reasonable doubt, both the statutory aggravating circumstance and the non-statutory aggravating circumstance. A finding of only one statutory aggravating circumstance is all that is required to authorize the imposition of the death penalty. Code Ann. § 27-2534.1 (c). The murder in this case was conducted in methodical execution-type fashion. The perpetrators severely beat and partially disrobed the victim seeking to find where the victim kept his money. The victim was "cut all to pieces" and gasoline was poured over him before he was shot. When appellant returned from the killing, he had blood on his clothing and there was blood in the yard where the victim was beaten. This clearly evidenced a depravity of mind on the part of appellant and involved torture to the victim. In both respects, it was outrageously and wantonly vile. The evidence supports the jury's finding of this statutory aggravating circumstance as well as the jury's finding of the non-statutory aggravating circumstance.

Furthermore, the evidence supports a finding of guilt beyond a reasonable doubt by a rational trier of fact. Jackson v. Virginia, — U. S. — (99 SC 2781, 61 LE2d 560) (1979), and the verdict and sentence are factually substantiated. We have reviewed the charge of the trial court to the jury in the sentencing phase of the trial and find it is not subject to the defects dealt with in Fleming v. State, 240 Ga. 142 (240 SE2d 37) (1978) and Hawes v. State, 240 Ga. 327 (240 SE2d 833) (1978).

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence has been imposed for murder, and we find the similar cases listed in the appendix support affirmance of the death penalty.

Kenneth Hardy's sentence to death for murder is not excessive or disproportionate considering both the crime and the defendant.

*Judgment affirmed. All the Justices concur.*

ARGUED JANUARY 14, 1980 — DECIDED
FEBRUARY 20, 1980.

L. Eddie Benton, Jr., for appellant.

Nat Hancock, District Attorney, Arthur K. Bolton, Attorney General, Daryl A. Robinson, Assistant Attorney General, for appellee.

APPENDIX.

Lingo v. State, 226 Ga. 496 (175 SE2d 657) (1970); Johnson v. State, 226 Ga. 511 (175 SE2d 840) (1970); Hunter v. State, 231 Ga. 494 (202 SE2d 441) (1973); Gregg v. State, 233 Ga. 117 (210 SE2d 659) (1974); Floyd v. State, 233 Ga. 280 (210 SE2d 810) (1974); Tamplin v. State, 235 Ga. 20 (218 SE2d 779) (1975); Dobbs v. State, 236 Ga. 427 (224 SE2d 3) (1976); Goodwin v. State, 236 Ga. 339 (223 SE2d 703) (1976); Birt v. State, 236 Ga. 815 (225 SE2d 248) (1976); Stanley v. State, 240 Ga. 341 (241 SE2d 173) (1977); Campbell v. State, 240 Ga. 352 (240 SE2d 828) (1977); Moore v. State, 240 Ga. 807 (243 SE2d 1) (1978); Westbrook v. State, 242 Ga. 151 (249 SE2d 524) (1978); Ruffin v. State, 243 Ga. 95 (252 SE2d 472) (1979); Amadeo v. State, 243 Ga. 627 (255 SE2d 718) (1979); Tucker v. State, 244 Ga. 721 (1979).