## 67275. THOMAS v. THE STATE.

DEEN, Presiding Judge.

Thomas was tried and convicted of burglary, for which he was sentenced to 5 years imprisonment followed by 5 years probation. On appeal, Thomas contends that the trial court erred in admitting into evidence testimony that the subject premises had previously been burglarized and in refusing to grant a mistrial following allegedly prejudicial comments made by the prosecutor during closing argument.

Lucille Riddle resided across the street from the burglarized premises, which were owned by Lula Shelton (who was in a nursing home). On September 18, 1982, at approximately 7:30 p.m., she observed two men enter the Shelton house through its side door, and she telephoned another neighbor, Rose Wingfield, to report that someone was breaking into Lula Shelton's house again. Rose Wingfield contacted the police and Norris Cooper, the husband of Lula Shelton's granddaughter (who had been looking after the house since Lula Shelton's placement in the nursing home).

Officers Andresen and Hunar appeared within minutes in answer to the call. Officer Andresen went to the side door of the Shelton house while Officer Hunar went to the front. Andresen testified that upon looking inside, he saw Thomas and another fellow

(later identified as Armstrong) 7-10 feet from the door, and that the appellant's hands were on a sewing machine. (The police report, however, which was prepared by Officer Hunar, did not refer to any sewing machine or similar item). The door jamb was splintered near the door knob, and the interior of the house appeared to have been ransacked. Andresen identified himself as a police officer, and Thomas initially explained that he owned the house and that they were moving some furniture; the appellant then modified his explanation by stating that the owner actually had been his grandmother who had died three weeks earlier. Armstrong hastened to point out that he was only there to help move some furniture. Norris Cooper arrived shortly, and advised the officers that neither Thomas nor Armstrong had ever been given permission to enter the premises. Officer Andresen also was allowed to testify, over the appellant's objection, that he had answered another burglary call concerning this house approximately three weeks earlier.

Laverne Cooper, the granddaughter of Lula Shelton, testified that she had been to the house the day before this incident, at which time the house was neat, and that when she first saw the house afterwards it was in disarray. She explained that there was no sewing machine in the house, but there was an old typewriter in a case which resembled that of a sewing machine.

At trial, Thomas explained that his friend, Anthony Rush, had approached and asked him for help in moving a piano that belonged to Rush's grandmother. As they proceeded to the grandmother's house, they had encountered and enlisted Armstrong and another fellow, who had a truck, in helping move the piano. Rush, who had promised to pay each of them $30, had separated from the group to go pick up his brother and was to meet them at the house. Thomas and Armstrong had walked up to the house while Armstrong's companion waited in the truck, which was parked two houses down the street; after trying the front door, they went to the side door and entered after the door opened when Thomas knocked. He and Armstrong soon concluded that four men would be unable to move the piano, and they started to leave; as they were walking out the door, Officer Andresen stopped and subsequently arrested them. He denied ever telling the officers that his grandmother had lived at the house. *Held:*

The appellant contends that the trial court erred in admitting the testimony of Rose Wingfield regarding her phone conversation with Lucille Riddle, in which the latter reported that the Shelton house was being broken into again, and the testimony of the police officer that he had answered another burglary call at this residence three weeks earlier. However, the testimony of Rose Wingfield clearly was admissible for the purpose of explaining her subsequent conduct

of contacting the police. OCGA § 24-3-2 (Code Ann. § 38-302), generally; *Payne v. State,* 163 Ga. App. 276 (293 SE2d 483) (1982). The state elicited the testimony for that purpose, and the appellant does not seriously contend that it was not admissible on that ground. While the police officer's testimony that a previous burglary had occurred at the premises was extraneous to the case against the appellant, we are unable to see, and the appellant fails to demonstrate, how admission of this extraneous fact alone could have prejudiced the appellant's right to a fair and impartial trial.

The gravamen of the appellant's argument on appeal is that this evidence of another burglary, combined with a comment by the prosecutor during the closing argument, was prejudicial in that it implicated the appellant with that previous crime. This contention ignores the fact that during the presentation of evidence there was absolutely no attempt by the state to connect the appellant with the previous burglary. Indeed, references by the two witnesses to any specific, previous burglary were brief and obtained emphasis only by the ensuing objections by the appellant's counsel.

During the closing argument, however, the prosecutor did comment that "[i]t is a fact that this burglary occurred at the site of a previous burglary. I think that goes to show that this gentleman knew that house was susceptible. It had property inside and he was able to go there and no one would be there at the house and he could get inside." Upon the appellant's immediate objection, the trial court instructed the jury that the sole matter on trial was whether the appellant had committed the alleged burglary on September 18, 1982, not the previous incident. The prosecutor then emphasized to the jury that "[t]he state is not accusing the defendant of having committed an earlier burglary. That is not what we are talking about. We are talking about the knowledge that this defendant had, whether he got it from Anthony or he got it on the street or whatever. He knew that this area was ripe for picking . . ." Especially in view of the trial court's instruction and the prosecutor's clarification to the jury, we conclude that the prosecutor's comment did not require granting a mistrial.

During closing argument, the prosecutor may draw conclusions or deductions from the evidence which may even be illogical, unreasonable, or absurd. *Sharp v. State,* 153 Ga. App. 486 (265 SE2d 837) (1980); *Dudley v. State,* 148 Ga. App. 560 (251 SE2d 815) (1978); *Abner v. State,* 139 Ga. App. 600 (229 SE2d 83) (1976). In *Sharp v. State,* supra, where the defendant was tried for theft by taking, the prosecutor remarked during closing argument that "I believe he was there snatching pocketbooks." This court found that statement not to warrant grant of a mistrial, and in the instant case, where the

prosecutor's comment (while perhaps an unreasonable and absurd deduction that the appellant knew that the Shelton house was an easy mark) did not really accuse the appellant of committing another crime, we reach the same conclusion.

*Judgment affirmed. Banke and Carley, JJ., concur.*

DECIDED NOVEMBER 29, 1983.

*James W. Howard*, for appellant.
*Lewis R. Slaton*, District Attorney, *Joseph J. Drolet, H. Allen Moye, D. Chris Jensen*, Assistant District Attorneys, for appellee.