69768. WATERS v. THE STATE.
(331 SE2d 893)

DEEN, Presiding Judge.

Carla Waters appeals from her conviction of first degree arson. She was sentenced to seven years; two years to serve in a state penal institution followed by five years on probation.

1. Appellant was accused of causing her home to be set on fire in order to recover insurance proceeds. She objects to the warrantless

search of the premises during the early morning daylight hours immediately after the fire was extinguished. The search resulted in the seizure of debris samples from the basement of the premises. Laboratory analysis of the samples revealed the presence of kerosene. While the state admits that the Fourth Amendment search warrant requirement normally applies to fire scenes, it claims that an exigent situation existed which justified the search of appellant's residence.

The Assistant Fire Chief testified that his suspicions as to the origin of the fire were aroused when he noticed that the fire was hotter than normal for a dwelling fire, that it took longer than normal to extinguish, and that the refrigerator was almost empty. He felt this latter finding to be unusual as three people resided in the house. Because a rekindle of the fire can occur up to eight hours after a fire is controlled, the area was secured and firefighters remained on duty with a "charged line" to fight any flare-ups. During the time the firefighters remained on duty, the investigating officers entered the scene and obtained samples for analysis.

*Michigan v. Tyler,* 436 U. S. 499 (98 SC 1942, 56 LE2d 486) (1978), and *Michigan v. Clifford,* ___ U. S. ___ (104 SC 641, 78 LE2d 477) (1984), hold that the Fourth Amendment search warrant requirement applies to fire scene searches with certain exceptions. In *Clifford,* supra at 646, the court reaffirmed the holding in *Tyler* that once firefighters were in the building they did not need a warrant to remain for a reasonable time after the blaze was extinguished in order to investigate the cause, since the aftermath of a fire often presents exigencies that will not tolerate the delay necessary to obtain either the owner's consent or a warrant. An example of an exigency that would justify a warrantless entry is given as the immediate threat of a rekindle. In the instant case, the search was done as soon as safely possible in the daylight hours during the period a rekindle was possible while the firefighters remained on duty with a charged line. We find no merit in appellant's contention.

2. The trial court properly exercised its discretion in permitting the replaying of a tape recording to the jury. *Byrd v. State,* 237 Ga. 781 (229 SE2d 631) (1976). It was also not error for the court to fail to give cautionary instructions sua sponte concerning any evidence that is replayed to the jury after it has returned. As appellant did not request any such instructions to be given following the replaying of this evidence, he has not raised a basis for objection in this court. *Fletcher v. State,* 159 Ga. App. 789, 790 (285 SE2d 762) (1981).

3. Appellant claimed she reported a blackmail attempt by Wanda Branson to her brother and called him to the stand to testify as to this report. The state objected and appellant contends the trial court erred in sustaining the objection because it was admissible under the "course of conduct" exception to the hearsay rule as set forth in

OCGA § 24-3-2. A review of the transcript reveals that this evidence was not admissible under OCGA § 24-3-2 as contended by appellant because there is nothing in the transcript to indicate that appellant's brother acted upon what she had told him, and, in any event, the brother's conduct is not an issue at trial. *Momon v. State*, 249 Ga. 865 (294 SE2d 482) (1982).

4. Appellant was indicted under OCGA § 16-7-60 (a) (3), which provides that "[a] person commits arson in the first degree when, by means of fire or explosive, he knowingly damages or knowingly causes, aids, abets, advises, encourages, hires, counsels, or procures another to damage: . . . Any dwelling house [etc.] . . . when such is insured against loss or damage by fire or explosive . . . without the consent of both the insurer and the insured."

During the District Attorney's closing argument, appellant objected to that portion dealing with the effect of arson upon insurance premiums. This argument was a reasonable inference and deduction drawn from the evidence based on the charge against appellant. *Thomas v. State*, 169 Ga. App. 119, 121 (312 SE2d 373) (1983); *Sharp v. State*, 153 Ga. App. 486 (265 SE2d 837) (1980). An argument which purports to show the effect of such a crime upon society is permissible. See *Payne v. State*, 158 Ga. App. 732 (282 SE2d 155) (1981); *McAllister v. State*, 157 Ga. App. 158 (276 SE2d 669) (1981).

5. The court admitted, over a hearsay objection, testimony by Paul Lawson as to the declarations of George Greenawalt, an alleged co-conspirator. Appellant contends that the testimony of a co-conspirator was improperly admitted without first establishing the conspiracy.

The state must present a prima facie case of conspiracy in order to admit the statements of a co-conspirator upon the trial of the other conspirator. Whether a conspiracy has been shown beyond a reasonable doubt is a jury question. *Gunter v. State*, 243 Ga. 651, 659 (256 SE2d 341) (1979); *Knight v. State*, 239 Ga. 594, 596 (238 SE2d 390) (1977). Evidence of the conspiracy was proven through the testimony of Wanda Branson and by a tape recording of a conversation between Branson and appellant. Branson testified that appellant told her she was willing to pay someone to burn her house and that Greenawalt started the fire. In the taped conversation appellant stated that Greenawalt would take the blame if she was caught and that she had not yet paid him. Paul Lawson described the close relationship between Greenawalt and appellant and then related a conversation he had with Greenawalt in June 1983. Greenawalt told Lawson about burning a house in order to obtain an insurance settlement. Although he did not identify the house, he pointed in the direction where appellant's house was located.

Lawson's testimony was admissible under OCGA § 24-3-5 as an

exception to the hearsay rule which provides that, "[a]fter the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." The duration of the conspiracy includes the concealment phase and the application of this statute cannot be objected to as a denial of confrontation. Rather, the courts have enumerated certain "indicia of reliability" as determinative of whether a statement may be placed before the jury. *Dutton v. Evans*, 400 U. S. 74 (91 SC 210, 27 LE2d 213) (1970). The indicia as set forth in *Dutton, supra*, require that the statement by the declarant be non-narrative; that the declarant is shown by the evidence to know whereof he speaks; that the witness is not apt to be proceeding on faulty recollection; and that the circumstances show that the declarant had no apparent reason to lie to the witness. Not all of the indicia need be present to support admissibility of the statement. *Mancusi v. Stubbs*, 408 U. S. 204 (92 SC 2308, 33 LE2d 293) (1972); *Mooney v. State*, 243 Ga. 373, 390 (254 SE2d 377) (1979); *Hardy v. State*, 245 Ga. 272, 277 (264 SE2d 209) (1980).

In the instant case, Greenawalt's statement was non-narrative, and he was shown by the evidence to know whereof he spoke. Lawson was not shown to be proceeding on faulty recollection, and because Greenawalt spoke against his own penal interest, there was no reason to believe that he lied to Lawson. As the state met its burden of proof and the indicia of reliability were satisfied, the court did not err in permitting Lawson to testify as to Greenawalt's statement.

6. More than two months after filing her enumeration of errors, appellant seeks to amend them by adding a sixth enumeration. She claims that her conviction should be reversed and a new trial ordered because of the denial of her attempt to present evidence from Greenawalt. The state has filed a motion to dismiss the additional enumeration, and appellant responds by contending that it is applicable to the enumeration dealt with in Division 5 above.

The only aspect of this enumeration that is similar to the one ruled upon in Division 5 is that it pertains to George Greenawalt. Enumerations of error may not be amended after the time for filing has expired. *Parham v. State*, 166 Ga. App. 855, 856 (305 SE2d 599) (1983); *Burke v. State*, 153 Ga. App. 769 (266 SE2d 549) (1980). We must therefore grant the state's motion to dismiss the amendment to the enumeration of errors.

*Judgment affirmed in part and dismissed in part. Banke, C. J., McMurray, P. J., Birdsong, P. J., Sognier, Pope, and Benham, JJ., concur. Carley, J., concurs in Divisions 1, 2, 3, 5 and 6 and in the judgment. Beasley, J., dissents.*

BEASLEY, Judge, dissenting.

I agree with every aspect of the decision except Division 1, regarding the non-consensual and warrantless search. An application of *Michigan v. Clifford*, ___ U. S. ___ (104 SC 641, 78 LE2d 477) (1984) construing the federal constitution,[1] requires that the evidence obtained by the state arson investigator and the observation of the assistant fire chief that the refrigerator was empty, must be excluded.

The assistant fire chief was the first to arrive on the scene when the fire was reported after 3:00 a.m. He became suspicious as to the cause of the fire because of the heavy fire and smoke present and because extinguishment required about double the amount of water and more than twice the amount of time normally needed for accidental fires. The fire was brought under control in 30-40 minutes and the water was cut off about 5:00 a.m. However, a hose was left connected for several hours in the event of a rekindling and a few firemen remained for this purpose and to assure security of the premises, which had been taped off, to prevent anyone from entering. The assistant fire chief determined to call in the investigator from the state fire marshal's office, who arrived a little after 8:00 a.m. By this time, the pumper had left and only two fire department cars and a pick-up truck were on the premises. The assistant fire chief had left after 6:00 a.m. for dry clothes and returned to await the investigator, to whom he turned over the determination of the fire's cause.

The latter had stopped at the fire department, where he talked to the resident, but he did not seek her permission to search her home. She testified at trial, without contradiction, that she went to the scene after learning of the fire from the early morning radio newscast but the firemen would not talk with her and just asked where she could be found, which information she gave. She also testified that she went to the fire "hall" that day, which is apparently when the inspector saw her on his way to the scene.

When he arrived, the fire was out and he began examining the house to find the origin of the fire. He concluded, after going all through, under, and around the house, that it had occurred in the basement under the badly burned kitchen. He also concluded that it did not stem from the furnace, hot water heater, or electric breaker box or any electrical wiring but rather, based on his sight and smell, from a substance. Consequently, he took two containers full (one five-gallon can and one one-gallon can) of debris samples, including papers, from the basement. These he sent to the State Crime Lab, which found them to contain kerosene. He had taken what he be-

---

[1] Appellant raises no state constitution argument; although the Constitution of Georgia was cited in the motion to suppress, no specific portion was enumerated nor was its protections pursued.

lieved had the strongest odor.

The assistant fire chief did not assist in this collecting endeavor but was still on the premises when the samples were taken between 10:00-11:00 a.m. The investigator was there four hours or more altogether. At some point the assistant fire chief looked in the nearly empty refrigerator because, as he testified, an empty refrigerator is an indication when arson is suspected. A number of photographs of the interior were taken, at the direction of the investigator, by someone from the fire department.

The three factors set out in *Michigan v. Clifford* must be inquired into. The first is whether the appellant had a reasonable expectation of privacy in her fire-damaged private dwelling. Since, thanks to the good work of the fire department, the premises were not wholly destroyed and the fire was confined to one part of the house, and since she had personal effects in this her private residence, there is little doubt that, subjectively, reasonable privacy interests remained. In fact, appellant testified that she stayed in the garage apartment the next night to protect things in the house.

All of that being the case, the warrant requirement applies, absent consent or exigent circumstances. There was no effort to obtain the resident's consent although she apparently was available. Nor were the circumstances exigent when the investigator began his work. The fire was out. The assistant fire chief had left once, the pumping apparatus had departed, and a separate function began. It was focused into determining the cause of the fire so as to make a judgment whether it was incendiary or merely accidental; it was not undertaken to prevent or eliminate flare-ups and was unconnected to the standby status of the firemen. In fact, by the time the investigator took the debris samples, the period during which the assistant fire chief said a rekindle might occur had nearly expired. The premises were secure and there was no reason to fear tampering with the conditions then existing, nor did the investigator voice any concern that a rekindling would destroy evidence. It simply did not occur to him, or apparently to the assistant fire chief either, that a warrant should be obtained despite the fact that the investigation would require a thorough search of the entire house.

The evidence fails to describe exigent circumstances which waive the warrant requirement. It was not shown that the investigation by the expert as to the cause and origin of the fire would have been hampered in any way by the obtaining of a warrant. The result was that the decision to authorize the search and thus invade the home was made by the assistant fire chief, not by an independent and impartial magistrate.

The examination of the refrigerator brings up the third factor which, according to *Michigan v. Clifford*, must be considered. "If the

privacy object [of the search] is to determine the cause and origin of a recent fire, an administrative warrant will suffice. To obtain such a warrant, fire officials need show only that a fire of undetermined origin has occurred on the premises, that the scope of the proposed search is reasonable and will not intrude unnecessarily on the fire victim's privacy, and that the search will be executed at a reasonable and convenient time.[2] If [on the other hand] the primary object of the search is to gather evidence of criminal activity, a criminal search warrant may be obtained only on a showing of probable cause to believe that relevant evidence will be found in the place to be searched." *Michigan*, supra, 52 LW at 4058.

The investigator needed at least an administrative warrant although it appears from the evidence, and particularly the testimony of the assistant fire chief and the investigator, that the purpose and nature of the latter's activity was a criminal investigation. However, whether taking samples and photos required a criminal warrant need not be decided. As relates to the refrigerator, however, the assistant chief's testimony establishes that its examination was for the latter purpose. The refrigerator's opening had nothing to do with trying to find the origin of the fire.

Thus, the admission of evidence gathered without proper legal authority was constitutionally erroneous. Although the other evidence against appellant was rather overwhelming, I cannot say that the error was harmless beyond a reasonable doubt; it "might have contributed to the conviction." *Foster v. State*, 156 Ga. App. 672, 674 (275 SE2d 745) (1980); *Tarpkin v. State*, 236 Ga. 67, 68 (1) (222 SE2d 364) (1976).

DECIDED MAY 1, 1985 —
REHEARING DENIED MAY 31, 1985 — ■■■■■■

*M. Gene Gouge, Robert A. Whitlow,* for appellant.
*J. O. Partain, District Attorney, Steven M. Harrison, Assistant District Attorney,* for appellee.

---

[2] Even "[an] administrative search into the cause of a recent fire does not give fire officials license to roam freely through the victim's private residence." *Michigan v. Clifford,* 52 LW at 4059.