72127. DAVIS v. THE STATE.
(344 SE2d 730)

DEEN, Presiding Judge.

The appellant, Charles Davis, was indicted, together with Charles Riggins and Harvey McCauley, for first degree arson. Davis and McCauley were tried and convicted jointly, but they appealed their convictions separately; Riggins pleaded guilty. This court reversed McCauley's conviction for insufficiency of evidence. *McCauley v. State*, 177 Ga. App. 426 (339 SE2d 399) (1986).

On August 12, 1983, while he was out of town, the appellant's private residence was extensively damaged by a fire. The Douglas Fire Department appeared at the scene shortly after having been alerted of the fire at approximately 11:00 p.m. Six or seven firemen participated in putting out the fire, which was completed for the most part in about three hours. A strong odor of gasoline was noticed throughout the house. After the fire was extinguished, however, two firemen stayed on the scene to secure the premises and to watch out for "hot

spots," or resurgence of fire, until approximately 7:00 a.m., when the assistant fire chief and an officer from the state fire marshal's office returned to obtain samples of materials from the house. (The state crime lab subsequently confirmed the presence of gasoline in these samples.) The appellant returned home late in the afternoon that day.

Several days later, two agents of the appellant's home insurer went to the residence and also took samples from various pieces of furniture, including a television set. The results of the laboratory work instigated by the insurer also confirmed the presence of gasoline in the samples and determined that the television set was a 23-inch, black and white Zenith that was at least ten years old (because of the use of vacuum tubes discontinued by Zenith in 1973.)

It was subsequently discovered that Charles Riggins, who admitted to having arranged for the house to be set afire, removed the living room furniture set, a color television, and a trash compactor before the fire was set. Riggins sold the furniture set, and the television and trash compactor were recovered by the appellant's own sister from the back porch of Riggins' son's residence and turned over to the police. Riggins gave a statement in which he indicated that the appellant had asked him to find someone to burn his house and had given him $500 to pay the person (Harvey McCauley). In exchange for arranging the matter, the appellant had invited Riggins to take whatever he wanted from the house. At trial Riggins recanted this statement and claimed to have been solely responsible for burning the appellant's house.

The appellant had insured his residence with State Farm Fire and Casualty Insurance Company, the effective date of the policy being July 1, 1983. Approximately two weeks before the fire, the appellant had expressed to the insurance agent some dissatisfaction over the insurer's refusal to cover the house for more than $50,000 value. Following the fire, the appellant filed a claim for the loss, including the living room furniture set, a new 25-inch color television set, a trash compactor, and some other items, the remains of which were not present in the house. During their investigation of the appellant's claim, the insurer's agents discovered that the appellant had several outstanding debts at the time of the fire. *Held*:

1. The appellant contends that the trial court erred in failing to suppress the evidence obtained and testimony given by the police and fire department investigators and the insurance investigators, on the basis that these "official" entries onto his property did not comply with the Fourth Amendment search warrant requirements, as applied in *Michigan v. Clifford*, 464 U. S. 287 (104 SC 641, 78 LE2d 477) (1984). Because reasonable privacy expectations may remain in fire-damaged premises, official entries into those premises require a war-

rant, consent, or exigent circumstances. *Michigan v. Tyler*, 436 U. S. 499 (98 SC 1942, 56 LE2d 486) (1978). A burning residence obviously constitutes an exigency justifying a warrantless entry, and "officials need no warrant to *remain* for 'a reasonable time to investigate the cause of a blaze after it has been extinguished.' 436 U. S., at 510, 56 LE2d 486, 98 SC 1942." *Michigan v. Clifford*, 78 LE2d at 484. See also *Waters v. State*, 174 Ga. App. 916 (331 SE2d 893) (1985).

In the instant case, although the blaze in the appellant's house was essentially extinguished by 2:00 a.m., two firemen remained on the scene to look out for hot spots, until the assistant fire chief and an official from the state fire marshal's office arrived at approximately 7:00 a.m. to investigate the cause of the fire. Keeping the two firemen on the scene was prudent, and we do not consider the duration of their vigil (approximately five hours) to have been unreasonable. Thus, because the authorized official entry had not terminated before the assistant fire chief returned, the appellant's reasonable expectations of privacy did not extend to the warrantless investigation of the cause of the fire and collection of the samples from the house.

The investigation and collection of evidence by the appellant's insurer's agent was a private contractual right under the insurance policy issued by State Farm, and that evidence certainly was admissible. Indeed, even if the insurer had no right to enter the premises and conduct an investigation, the evidence would still be admissible. "[H]owever unreasonable a search by a private person may be, absent participation by governmental agents the Fourth Amendment is totally uninvolved and the evidence, though illegally seized by private individuals, is admissible in a criminal prosecution." *State v. Young*, 234 Ga. 488, 489 (216 SE2d 586) (1975).

2. The appellant also contends that the trial court erred in not directing a verdict of acquittal on the basis that the only evidence connecting him with the arson was the uncorroborated statement of the accomplice, Riggins. It is well settled that " '[w]hile a conviction based entirely upon the testimony of an alleged accomplice, uncorroborated by other competent evidence, will not be allowed to stand, corroboration is peculiarly a matter for the jury, and sufficient corroboration may consist of either direct or circumstantial evidence which connects the defendant with the crime, tends to show his participation therein, and would justify an inference of the guilt of the accused independently of the testimony of the accomplice.' [Cits.]" *Gunter v. State*, 243 Ga. 651, 655 (256 SE2d 341) (1979). Only slight corroborative evidence is required, and it need not be sufficient by itself to support a conviction. *Cofer v. State*, 166 Ga. App. 436 (304 SE2d 537) (1983). In this case, contrary to the appellant's contention, there was independent corroborating evidence tending to connect the appellant and the arson: the appellant's financial distress; his desire for in-

creased coverage soon before the fire; and the appellant's apparently fraudulent insurance claim for the fire loss. This evidence, although slight, sufficiently corroborated the statement of the alleged accomplice and the trial court properly denied the motion for directed verdict of acquittal.

3. Riggins' statement that implicated the appellant clearly was admissible as substantive evidence under *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982). However, the admissibility of such a statement does not guarantee the propriety of allowing the actual written statement to be taken into the jury room. In *Royals v. State*, 208 Ga. 78 (65 SE2d 158) (1951), the Supreme Court concluded that "[a]ll writings introduced in evidence in lieu of testimony from the witness stand, such as interrogatories, depositions, dying declarations, and confessions of guilt of a defendant or of an alleged co-conspirator, which depend entirely for their value on the credibility of the maker, should not be in the possession of the jury during their deliberations. Where any of such papers are delivered to the jury, over timely objections, a new trial must be granted." The primary reason for such a rule is the concern that such written statements may have an unfair advantage over oral testimony, since the jurors could refer to them as often as they liked. Perhaps it could be argued that the *Royals* rule is inapposite in this case, where the person who made the written statement also took the stand and was subjected to cross-examination, but that distinguishing factor has previously been tacitly rejected. See *Heard v. State*, 169 Ga. App. 609 (314 SE2d 451) (1984).

The prosecutor, apparently aware of the above rule, actually attempted to have Riggins' statement withheld from the jury room, but counsel for the appellant's co-defendant, McCauley, objected and demanded that the exhibit be submitted to the jury. The appellant's counsel timely objected to the submission of the document to the jury. In honoring the demand of McCauley's counsel, over the prosecutor's preference and the objection of the appellant, the trial court erred and a new trial is necessary. Cf. *Heard v. State*, supra.

4. The appellant's remaining enumerations of error are either without merit or involve matters not likely to recur upon retrial.

*Judgment reversed. Benham, J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur that a new trial is necessary but for a more fundamental reason than the admittance of a document, as ruled by the majority.

With respect to Division 1 of the opinion, I cannot agree that all the warrantless searches and seizures met the minimum standards required by *Michigan v. Clifford*, 464 U. S. 287 (104 SC 641, 78 LE2d 477) (1984). True, the insurance company investigators' activities

were not governed by the Fourth and Fourteenth Amendments, absent any collusion with government agents to sidestep the warrant requirement; here there is no such suggestion.

But the circumstances were such that, in my opinion, the searches and seizures by the police, the assistant fire chief, and the state fire marshal required a warrant. I would apply the same analysis which appears in the lone dissent in *Waters v. State,* 174 Ga. App. 916, 920 (331 SE2d 893) (1985). The premises were a fire-damaged private home in which there were legitimate privacy interests, exigent circumstances did not exist which would excuse the obtaining of a warrant (the investigators did not even claim that there were), and the object of the searches and seizures was admittedly to gather evidence of criminal activity. These are the factors which, according to *Michigan v. Clifford,* supra, 78 LE2d at 483, govern.

Nothing occurred to eliminate the privacy interests which the occupant had in his home. He was out of town at the time, and no consent was obtained. His statement to police two nights after the fire, to the effect that he wanted them to find the culprit, could not be considered an after-the-fact consent because there is no evidence that he was aware of the searches and seizures that had been made during his absence.

The fire was "completely out" and the trucks had been sent back to service by 2:00 a.m., testified the assistant fire chief who was in charge of that Department's investigation. After the fire was out, he smelled gasoline on the premises, noticed liquid on the furniture and thought it was gasoline, and then, suspecting crime, took samples, but these were not tested or introduced into evidence. He had detected the odor of gasoline and suspected arson as early as 11:30 p.m.

The next morning after 10:00 a.m. and about eight hours after the fire was out, he accompanied the state fire marshal to the scene. He told the two firemen who were still there that they could leave, and he and the fire marshal undertook to search for criminal evidence. The latter took "some more samples of the same — approximately the same area where [the assistant fire chief] had received samples [the evening] before," and sent them to the state crime lab. The police investigator who had been present the night before, solely for criminal investigation purposes, joined them and took photos which were admitted into evidence. All three left around noon.

No reason was given, nor does any appear, for not obtaining a search warrant from a detached magistrate who always serves the purpose of scrutinizing whether there is probable cause for the government's intrusion into private premises. The function which was being performed by the three was totally that of carrying out a criminal investigation; the function of firefighting and ensuring against the rekindling of fire had ceased.

"The critical inquiry is whether reasonable expectations of privacy exist in the fire-damaged premises at a particular time, and if so, whether exigencies justify the re-entries." *Michigan v. Clifford*, supra, 78 LE2d at 484, n. 3.

The fact that two firemen were left at the scene to watch until morning should not alter the requirement for a warrant. Otherwise the constitutional safeguard could always be skirted by simply maintaining a fireman on the premises until ready for the criminal investigation. Besides, the firemen were there for one purpose and the three investigators were there for quite another.

Even if the primary object of the search had been to determine the cause and origin of the recent fire, *Michigan v. Clifford* would require at least an administrative warrant. There was none here.

As discussed in *Payton v. New York*, 445 U. S. 573, 589-590 (100 SC 1371, 63 LE2d 639) (1980), " '[A]n invasion of the sanctity of the home . . . is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is clearly present.' [Cit.] . . .

"The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home — a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their . . . houses . . . shall not be violated.' That language unequivocally establishes the proposition that '[a]t the very core (of the Fourth Amendment) stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' [Cit]. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."

I concur in Divisions 2, 3 and 4.

DECIDED APRIL 16, 1986.

*Douglas W. Mitchell III*, for appellant.
*Harry D. Dixon, Jr., District Attorney, Albert H. Tester, Charles P. Taylor, Assistant District Attorneys*, for appellee.