## 70066. BRAGG v. THE STATE.
(334 SE2d 184)

BEASLEY, Judge.

Defendant was convicted of arson in the first degree. His motion for new trial was denied, and he appealed.

1. Bragg first asserts that there is insufficient evidence to support

his conviction of OCGA § 16-7-60 (a) which provides: "A person commits the offense of arson in the first degree when, by means of fire or explosive, he knowingly damages . . . (1) Any dwelling house . . . in which another has a security interest, . . . without the consent of both . . . ; . . . (3) Any dwelling house . . . when such is insured against loss or damage by fire or explosive and such loss or damage is accomplished without the consent of both the insurer and the insured; . . ."

" 'Three things are necessary to sustain a conviction for arson: that the real property alleged in the indictment was in fact burned, that its cause was a criminal agency, and that the defendant was that criminal agency. *Hurst v. State*, 88 Ga. App. 798 (78 SE2d 80) (1953). The latter may be proved by circumstantial evidence." *Powell v. State*, 171 Ga. App. 876 (1) (321 SE2d 745) (1984). See also *Cook v. State*, 146 Ga. App. 353, 354 (246 SE2d 347) (1978).

Every fire is presumed to be accidental or providential. The burden is on the state to prove that the fire was of an incendiary origin and that the accused did the burning. *Powell*, supra at 877. " 'The accused, having been convicted by a jury and his conviction having been approved by the trial court in overruling the motion for a new trial, it is incumbent upon a court of review to construe the evidence in a light most unfavorable to the accused. This is true, for every presumption is in favor of such a verdict.' (Cit.)" *Kennedy v. State*, 172 Ga. App. 336, 340 (4) (323 SE2d 169) (1984). The evidence viewed in such a light shows the following:

On August 27, 1982 Bragg's home was damaged by fire. An investigator determined the fire was incendiary in nature. Gasoline was found on the carpet, and a half-burned plastic gallon jug containing gasoline was found in a master bedroom closet where an investigator testified the fire originated. From this, the jury could properly determine that the fire was caused by a criminal agency. See *Kennedy*, supra.

In support of the state's theory that Bragg was the criminal agency, the state presented evidence of motive. Bragg had serious financial problems. He had defaulted on certain loans, was about to default on others, and had written numerous bad checks. He owed between $150,000 and $200,000, and his annual income was only $13,000. The home was insured against fire loss for $74,800. Two lenders had deeds to secure debt on it.

Evidence as to opportunity was also introduced. Plastic gallon jugs which were similar if not identical to the jug found in the closet were kept by Bragg in the kitchen cabinets, and Bragg kept gasoline in his work truck. Bragg left the house earlier on the morning of the fire and returned around 8:00 a.m. The fire was first discovered between 10:30 a.m. and 10:45 a.m. and could have been burning from 20

minutes to 1-½ hours. Bragg himself testified that he was in the area of his home several times for various purposes on the morning of the fire, after the quick visit near 8:00 a.m. Cf. *Cook v. State*, supra.

Additionally, the state introduced evidence of deceptive responses by Bragg to questions in the stipulated polygraph exam, such as "Did you set fire to your house?" and "Did you put that jug of gas in the bedroom closet?" An investigator also testified that Bragg gave him inaccurate statements at an initial interview as to his financial status, informing the investigator that he had no outstanding debts.

Bragg's defense, by his own and others' testimony, was alibi. In an effort to explain the causative agent, he attempted to show that his home had been burglarized on the morning of the fire. The state's evidence, on the other hand, was that there was no forced entry of the home except by fire department personnel.

"To set aside the conviction, it is not sufficient that the circumstantial evidence show that the act might by bare possibility have been done by somebody else. [Cit.] It must exclude every reasonable hypothesis save the guilt of the accused, which is primarily a question for determination for the jury. [Cit.] An appellate court has no yardstick to determine what in a given case is a reasonable hypothesis except to rely on the informed and weighed conclusions of twelve intelligent jurors. The jurors in this case heard the witness[es], and are better qualified to judge the reasonableness of a hypothesis raised by evidence (or its lack) than is this court which is restricted to a cold record and to issues of law. [Cit.]" *Burns v. State*, 166 Ga. App. 766 (3) (305 SE2d 398) (1983). Contrary to Bragg's assertion, the jury is not bound to accept the evidence introduced of alibi as true; the jury determines the credibility of the witnesses and weight to be given their testimony. OCGA § 24-9-80; *Armour v. State*, 154 Ga. App. 740 (270 SE2d 22) (1980).

On the basis of the evidence presented, a rational trier of fact could have found appellant guilty beyond a reasonable doubt. See *Kennedy*, supra, 172 Ga. App. at 340; *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Bragg asserts that the trial court committed reversible error by granting the state's motion in limine.

Prior to trial, defendant, his attorney, and the state signed a stipulation wherein defendant requested a polygraph exam before an authorized examiner, and all parties consented to the results being admissible at trial, unless the results were inconclusive in the opinion of the examiner. Defendant also stipulated that if he subsequently refused to take the exam, his refusal would be admissible at trial. Thereafter the examination was administered and its results were offered in evidence by the state. Following the state's polygraph exam, Bragg hired an independent examiner to administer a second poly-

graph. The state filed a notice to produce the results of this unstipulated exam. Bragg without objection complied with this request.

Prior to the commencement of trial, the state filed a motion in limine to prohibit the introduction of any evidene regarding the results of the unstipulated exam. After hearing, the trial court granted this motion.

Bragg argues that, by filing a notice to produce the results of the unstipulated exam, the state opened the door to the introduction of these results at trial. He contends that the state, by announcing in its motion to produce that the polygraph results requested were "material and relevant to the issue of guilt and effective cross-examination of Defendant's witnesses . . . ," waived its right to assert that this evidence was not material and relevant and is thus inadmissible, as it did in its motion in limine. To hold otherwise, Bragg insists, would give the state an unconscionable advantage by enabling it to pry into defendants' affairs without subjecting it to the risk of having what it inspected introduced by defense at trial. Therefore he asserts, all writings produced on notice and inspected are admissible in evidence for the producing party without further proof.

We cannot accept Bragg's position. Bragg cites two Georgia cases in support of his argument. *Wooten v. Nall*, 18 Ga. 609 (1855) and *Cushman v. Coleman*, 92 Ga. 772 (19 SE 46) (1893). Neither relates to the limited criminal discovery procedure now available pursuant to OCGA §§ 17-7-210 and 17-7-211. Requesting to examine an adversary's evidence in advance of trial does not ipso facto make it admissible. One of the purposes of so requesting is to determine if it is admissible; another is to prepare in advance to meet it. Asking to see it makes it no more admissible than it would be had the state not made the request acceded to. A notice to produce is not equivalent to an advance stipulation that it may be admitted.

We agree with the trial court's holding that "to adopt this position would undermine the advances which have been made in allowing greater discovery in . . . criminal cases." "Prior to April 1, 1980 there were no provisions in Georgia law governing pre-trial discovery in criminal cases. (Cits.) However, the 1980 General Assembly amended Code Ch. 27-13 (OCGA §§ 17-7-210, 17-7-211) 'so as to provide for discovery in criminal cases of statements made by defendants while in police custody and of scientific reports; to provide for procedure in relation thereto; [and] to provide for an exclusionary rule . . .' Ga. L. 1980, p. 1388." *Garner v. State*, 159 Ga. App. 244 (1) (282 SE2d 909) (1981). "The object of Code Ann. § 27-1302 (OCGA § 17-7-210) is to ensure to the defendant, as a right, definite information in writing of all relevant and material portions of his own statement that the state may rely upon to his disadvantage." *McCarty v. State*, 161 Ga. App. 444, 446 (1) (288 SE2d 249) (1982). "The 'spirit and reason'

of . . . (OCGA § 17-7-211) is to provide for discovery of scientific reports in criminal cases, an opportunity which until the enactment of this statute had been withheld from criminal defendants. (Some reports could previously have been discovered under the authority of *Brady v. Maryland.*) This discovery statute was obviously designed to implement, not impede, the fair and speedy determination of cases." *State v. Meminger,* 249 Ga. 561, 563 (2) (292 SE2d 681) (1982). For this court to adopt the position that all evidence produced on notice and inspected would be admissible by the producing party would diminish discovery in criminal cases and thwart the above-mentioned goals. A party would have to decide in advance of seeing the evidence that he agreed to its admissibility.

As to polygraph, the state may refuse an "express stipulation" because of its unreliability or the lack of training of the operator or the ambiguity of the results or the arbitrary characterization of the results, all caveats recognized in *Chambers.* Or the state, or defendant, may withhold express stipulation for no reason. The point is, it is not admissible without such.

The law in Georgia is clear that results of polygraph examinations are not admissible in evidence except upon express stipulation of the parties. *State v. Chambers,* 240 Ga. 76 (239 SE2d 324) (1977); *McGee v. State,* 253 Ga. 278 (6) (319 SE2d 836) (1984). Because of their controversial reliability, ordinarily the results would be inadmissible. It is only the express stipulation of the parties that makes "the results of a lie detector test . . . admissible as evidence for the jury to attach to them whatever probative value they may find them to have." *Chambers,* supra at 76-77. That is the only exception. This court noted in *Bundren v. State,* 155 Ga. App. 265, 266 (4) (270 SE2d 807) (1980), that "[t]hey have not been held admissible in the absence of such a stipulation." They were not allowed for the purpose of defendant's impeaching the state's witness, because "[t]here was no express stipulation." *Harrell v. State,* 253 Ga. 474, 476 (5) (321 SE2d 739) (1984). See also *McMillan v. State,* 253 Ga. 520, 522 (2) (322 SE2d 278) (1984). Appellant relies on *Smith v. State,* 245 Ga. 205, 206 (2) (264 SE2d 15) (1980), but in that case, too, the tests were given "after a stipulation was signed that the results of such tests would be admissible at trial."

3. We find no error in the trial court's denial of Bragg's motion for new trial based on the same grounds.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED JULY 9, 1985 —
REHEARING DENIED JULY 31, 1985 —

*Jane Kent-Plaginos,* for appellant.

*Rafe Banks III, District Attorney, Garry T. Moss, Assistant District Attorney*, for appellee.