## A01A0459. MINERS v. THE STATE.
### (550 SE2d 725)

JOHNSON, Presiding Judge.

Shannon Miners appeals from his convictions of arson and insurance fraud. He admits that there is sufficient evidence that arson was committed at his house, but challenges the sufficiency of the evidence identifying him as the arsonist. He also contests the admission of certain evidence and a continuance of the trial. Because Miners has not shown reversible error, we affirm his convictions.

1. In reviewing the sufficiency of the evidence, we do not determine the credibility of the witnesses or resolve conflicts in the evidence. Those are matters for a jury.[1] Instead, we look at the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.[2]

Viewed in that light, the evidence in this case shows, as Miners admits, that on April 11, 1997, his house in Ringgold burned as the result of arson. Firefighters who responded to the fire found that the house doors were locked, so they had to break in to look for victims. As they checked each room, the firefighters found no one in the house and noticed that some rooms appeared to have been emptied of belongings. In the attic, they found two partially melted gasoline containers and that gasoline had been poured there. The firefighters also found that natural gas was leaking into the basement where the steel gas supply pipe to the hot water heater had been broken by force.

In identifying Miners as the arsonist, the state relied on circumstantial evidence. Tina Brownfield, who had dated Miners, told a

---

[8] See *Martis v. State*, 193 Ga. App. 375, 376 (2) (387 SE2d 643) (1989).
[1] *Rainey v. State*, 179 Ga. App. 584, 586 (1) (347 SE2d 341) (1986).
[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

police detective that Miners made suspicious comments about his house prior to the fire. One weekend, he refused to leave Brownfield's apartment, saying that he could not go home because something was going to happen to his house and he did not want to be there when it happened. On another occasion, when Miners' father called him at Brownfield's apartment, Miners commented that he and Brownfield should go and see what was left of the house.

Additionally, Brownfield told the detective that after Miners was notified of the fire, he said that it was not supposed to have happened like that; that the house should have blown up rather than burned. Brownfield also informed the detective that Miners said he had been planning to do something to the house for a long time so he could rebuild it with insurance money.

Brownfield testified at trial that she had told the detective the truth. She further testified she was with Miners on the night of the fire. And that he told her that she would be his alibi.

Miners' former wife, Kim Miners, also testified at trial. She stated that before the fire, she noticed that Alabama paraphernalia belonging to Miners — pictures, prints, knives, hats, and a table — had been removed from the house. After the fire, Miners came to her place of employment and told her to tell investigators that everything, particularly the Alabama prints, had been in the house. And when she visited Miners at his father's house, she saw various items that she had thought were in the house at the time of the fire. She also testified that she helped Miners fill out his insurance proof of loss form, and that on the form he listed the Alabama paraphernalia and other items that were not in the house at the time of the fire.

Police investigators obtained a search warrant for Miners' father's house. In the father's house, they found numerous items that Kim Miners said had been in Miners' own house prior to the fire, including adult movies, a table with an Alabama logo, Alabama hats, boxes of knives, and guns. The day after they executed the search warrant, the police returned to the father's house, obtained consent from the father to search the house again, and then found more items identified by Kim Miners as having been in Miners' house before the fire.

Three days after the fire, Miners agreed to submit to a polygraph examination, stipulating that its results would be admissible evidence at a trial. The polygraph examiner testified that Miners showed deception when he denied knowing who had set the fire, denied participating in setting the fire, and denied setting the fire himself.

Contrary to Miners' claims, the circumstantial evidence presented by the state was sufficient to support the jury's guilty verdicts. Whether the circumstances of a case are sufficient to exclude

every reasonable hypothesis other than the guilt of the accused is primarily a question for the jury.[3] We can disturb the jury's verdict only where the evidence, even if circumstantial, is insupportable as a matter of law.[4] Here, the circumstantial evidence was not legally insupportable and authorized a rational trier of fact to find Miners guilty beyond a reasonable doubt of arson and insurance fraud.[5]

2. Miners argues that the court should have suppressed photographs of open drawers throughout the house, of the insides of closets, and of rooms that were not damaged by fire because they were obtained without a warrant on the night of the fire. The argument is without merit.

Reasonable privacy expectations may remain in fire-damaged premises, so official entries into those premises require a warrant, consent, or exigent circumstances.[6] A burning residence is an exigency that justifies a warrantless entry, and officials may remain for a reasonable time to investigate the cause of the fire after it has been extinguished.[7]

In the instant case, officials were justified in entering the burning house without a warrant to combat the fire. And after the fire was extinguished, because of the leaking gas in the basement, they properly waited for a gas company representative to arrive and declare the area safe. During that time, for about five hours after firefighters had left the scene, a fire investigator stayed at the house and took the pictures in question.

Miners claims that the photographs were unrelated to the cause or origin of the fire. On the contrary, the photographs are pertinent evidence in determining whether the fire was caused accidentally or intentionally; the absence of items from drawers and rooms could be construed as a suspicious circumstance indicating that the fire was not accidental.[8] Because officials were properly in the house collecting evidence concerning the cause of the fire, we find no error in the trial court's refusal to suppress the photographs.

3. In his initial appellate brief, Miners argued that the trial court erred in not suppressing evidence obtained from his father's house pursuant to the search warrant because at the suppression

---

[3] *Lathan v. State*, 241 Ga. App. 750, 751 (1) (526 SE2d 350) (2000).

[4] Id.

[5] See *Stanford v. State*, 236 Ga. App. 597, 598 (1) (512 SE2d 708) (1999); *Steidl v. State*, 215 Ga. App. 17, 18-19 (449 SE2d 644) (1994); *Hart v. State*, 184 Ga. App. 300, 301 (361 SE2d 277) (1987).

[6] *Davis v. State*, 178 Ga. App. 760, 761-762 (344 SE2d 730) (1986).

[7] Id.

[8] See *Waters v. State*, 174 Ga. App. 916, 917 (1) (331 SE2d 893) (1985) (assistant fire chief suspicious of fire's origin in part because refrigerator was almost empty in house where three people resided).

hearing the state failed to introduce an exhibit that had been attached to the application for the search warrant and that had been relied on by the judge who issued the warrant. But in his reply to the state's, Miners has expressly abandoned that argument, conceding that the exhibit was in fact entered into evidence at the suppression hearing.

Although he has abandoned his original argument, Miners has attempted to make a new argument in his reply brief. He now claims that some of the facts contained in the exhibit relied upon by the judge who issued the warrant were obtained from the search of Miners' house on the night of the fire. So, he reasons, if the search of his house was illegal, then the warrant obtained as a result of that search would also be improper.

Miners may not, in his reply brief, assert a completely new argument that was not made in his original enumerations of error.[9] Moreover, because we have held in Division 2 that there was no illegal search of his burning house, his new argument is without merit.

4. Miners contends that the court erred in not suppressing evidence obtained pursuant to the consent search of his father's house, claiming that his father did not have authority to consent to a search of the bedroom where Miners was sleeping after the fire and to the extra room where Miners had stored some of his property.

Any person who possesses common authority over premises may consent to a warrantless search of those premises.[10] Here, Miners' father owned the house, and there is no evidence of any landlord-tenant relationship between him and his son. He accordingly had authority over the spare bedroom, where he also had stored items, and over the bedroom in which he was allowing his son to stay after the fire.[11] Because his consent to the search of his own house was valid, the trial court did not err in refusing to suppress evidence found during that search.

5. Miners relies on *Cuzzort v. State*[12] to argue that the trial court violated Uniform Superior Court Rule 3.1, OCGA § 17-8-1 and his due process rights by refusing to dismiss his case when it was not called for trial during the regular felony trial calendar. The case was scheduled for trial in the Lookout Mountain Judicial Circuit during a two-week felony trial term in March 1998. In the Lookout Mountain Judicial Circuit at that time, the system in place allowed the district attorney's office to prepare the trial calendar and to decide in what

---

[9] See *Mobley v. Sewell*, 226 Ga. App. 866, 869 (487 SE2d 398) (1997); *Brown v. State*, 198 Ga. App. 590, 591 (4) (402 SE2d 341) (1991).

[10] *Smith v. State*, 264 Ga. 87 (2) (441 SE2d 241) (1994).

[11] See id.; *Howard v. State*, 207 Ga. App. 125, 126 (1) (427 SE2d 96) (1993).

[12] 271 Ga. 464 (519 SE2d 687) (1999).

order to call cases for trial. Because the district attorney's office was unable to locate a witness, it did not call Miners' case for trial during the felony calendar. Instead, the case was specially set for trial three weeks later, during a misdemeanor trial calendar.

In *Cuzzort*,[13] the Supreme Court held that the Lookout Mountain Judicial Circuit's system violated USCR 3.1 by allowing the district attorney to make case assignments to the circuit's judges, and the system violated OCGA § 17-8-1 by allowing the district attorney to call cases out of the order listed on the trial calendar. Because *Cuzzort* was an interlocutory appeal, the Supreme Court did not rule on whether the violations of USCR 3.1 and OCGA § 17-8-1 would mandate the reversal of a conviction under the Lookout Mountain Judicial Circuit's system, nor did it consider whether the system violated constitutional due process.

In the recent case of *State v. Wooten*,[14] the Supreme Court considered those two matters. The Supreme Court held that the system did not violate due process under either the Georgia Constitution or the United States Constitution.[15] Moreover, the Supreme Court held that it was highly improbable that the nonconstitutional errors in the circuit's system contributed to the jury's guilty verdict in that case.[16]

In the instant case, Miners is correct that there were violations of USCR 3.1 and OCGA § 17-8-1 in that the district attorney was allowed to decide not to call the case for trial even though it was on the trial calendar. But, under *Wooten*, there is no due process violation, and we find that it is highly improbable that the nonconstitutional errors in the system contributed to the guilty verdicts in this case. We therefore will not reverse Miners' arson and insurance fraud convictions on this ground.

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED JUNE 22, 2001 —
RECONSIDERATION DENIED JULY 6, 2001 — ▮▮▮▮▮▮

*Steven M. Ellis*, for appellant.
*Herbert E. Franklin, Jr., District Attorney, Elizabeth O. Evans, Assistant District Attorney*, for appellee.

---

[13] Id. at 465 (2), (3).
[14] 273 Ga. 529 (543 SE2d 721) (2001).
[15] Id. at 532 (2).
[16] Id. at 532-533 (3).